Rice *v.* Dewey.

———•••———

## RICE, survivor &c., and others, *vs.* DEWEY.

If purchasers of land from a mortgagor have a right, as against the mortgagor, to have their land discharged from the lien of the mortgage, at the time of its transfer to an assignee, such right is equally available as against the assignee; the latter taking the mortgage subject to all defenses that existed against it in the hands of the mortgagee.

Parcels of land covered by a mortgage and originally subject thereto, will so continue, unless by some act of the mortgagee they are discharged. Whether the mortgagee considers them subject to the lien is immaterial, except so far as it may be evidence of some agreement, act or omission on his part, discharging the lien.

A mortgagor has the right to sell the mortgaged premises, in such parcels as he chooses; and knowledge by the mortgagee that he is making such sales

Rice *v.* Dewey.

and receiving the consideration therefor, will not discharge the lands sold from the lien of the mortgage.

When a mortgagee causes his mortgage to be recorded, he has done all that is required of him, to preserve his lien; and all persons purchasing from the mortgagor, subsequently, are bound, at their peril, to investigate the title and take notice of the mortgage. If they neglect to do this, neither law nor equity can relieve them from the consequences of the omission.

A finding, by a referee, that sales of land by a mortgagor were made and the consideration therefor received by him, with the *consent* of the mortgagee, implies something more than the mere non-action of the latter to prevent the sales. It implies that the mortgagee had entered into some agreement respecting his lien, whereby the lands purchased were discharged from the lien.

A declaration, by the assignee of a mortgage, that he did not suppose, when he purchased the mortgage, that it was a lien upon lots previously sold by the mortgagor, is of no consequence, except as tending to show an agreement, or act, of the mortgagee, discharging the mortgage.

So as to a promise by him that he will release one of the parcels of land conveyed by the mortgagor; and a declaration that the mortgagor's deed would be good, and that he (the assignee) is going to release several lots, and will have it all done at once; such declaration being only evidence from which it may be inferred that the mortgagee, or his assignee, has agreed to release the lots; provided such inference is warranted by the other evidence in the case.

Knowledge by a mortgagee of sales of land made by the mortgagor will not estop him from asserting the lien of the mortgage; neither will it estop his assignee.

A parol arrangement between mortgagor and mortgagee, by which the former is to execute a new bond and mortgage to the latter, leaving out the parcels of land sold by the mortgagor, is a mere verbal contract in regard to an interest in real estate; and being based upon no consideration, and in no part performed, is wholly nugatory, so far as the parties thereto are concerned, and cannot aid purchasers from the mortgagor, if not communicated to, and acted upon by, them.

Knowledge, by the assignee of a mortgage, that purchasers from the mortgagor are making improvements upon the lots conveyed to them, will not estop him from asserting the lien of the mortgage thereon. He has a right to presume that such purchasers have examined the records and know of the mortgage, and have obtained security satisfactory to themselves, against the lien.

No case can be found, holding that a mortgagee whose mortgage is duly recorded loses any right by neglecting to give personal notice of such mortgage, to a purchaser from the mortgagor. *Per* GROVER, J.

An *estoppel en pais* arises when a party has made representations, or done acts, to influence the conduct of another, by inducing a belief of a given state of

Rice *v.* Dewey.

facts, when such party, having acted upon such belief, would be injured by showing a different state of facts.

When lands sold and conveyed by a mortgagor are charged with the mortgage debt, improvements that constitute a part of the realty, irrespective of the question by whom made, are equally subject to the lien of the mortgage as the land upon which they are made.

It is well settled that a new promise to pay is no defense to an action brought upon the original obligation, although expressly agreed to be taken as payment; the reason being that there is no consideration for the agreement to receive the new promise in payment.

When this reason does not apply, the rule no longer prevails. If any new or additional security, or other benefit, is obtained by the creditor, or any detriment sustained by the debtor, by the new arrangement, the defense is perfect.

Thus where promissory notes bearing interest are given and received in payment of interest due upon a mortgage, a demand not drawing interest being thus converted into a debt on interest, this is a good consideration for the agreement of the holder of the mortgage to accept the notes in payment.

APPEAL by the defendant from a judgment entered upon the report of a referee. The action was brought to restrain the defendant from selling under a statute foreclosure certain mortgaged premises, in which the plaintiffs were severally interested as purchasers from the mortgagor.

On the 28th day of October, 1848, Elias S. Hedges executed his bond to Nathaniel A. Lowry, conditioned for the payment of $5500 and interest, in future installments. To secure the payment of the bond, he at the same time executed a mortgage upon certain real estate, situated in and near Sinclearville, Chautauqua county. The mortgage was duly recorded January 31st, 1849. On the 3d day of March, 1849, the mortgagor conveyed to Mark Crawford, the intestate of the plaintiffs Crawford and Blanchard, eighteen acres of the mortgaged premises for $875; $200 was paid down, and the residue, $675, was secured by the bond and mortgage of the purchaser.

On the 4th March, 1850, Hedges conveyed to the plaintiff Ezra Brown five-sixths of an acre of the mortgaged premises, for which Brown paid him at the time a price

of $150. On the same day Hedges conveyed to the plaintiff Sylvanus Pickard about two-thirds of an acre of the same for $150, then paid to him. In the fall of 1850 Martin B. Crawford made a parol contract with Hedges for two-thirds of an acre of the premises at a price of $150, and in the summer of 1851 paid him $133 in work on the same. In the spring of 1852 Crawford sold his interest in the land to Merchant, by a parol contract of sale, for the same he gave. Crawford at the time informed Merchant respecting the mortgage upon the premises. · Hedges conveyed to Merchant, October 8th, 1852. In April, 1853, Merchant conveyed to the plaintiff Copp. Soon after his purchase, Crawford improved his premises to the value of several hundred dollars. In the summer and fall of 1850 Brown erected improvements on his lot of the worth of $1400, and Pickard did the like in the same summer in the amount of $800. The referee found as a fact, to which exception was taken, that the above mentioned conveyances by Hedges were made with the knowledge and consent of Lowry.

On the 13th day of January, 1851, by an instrument in writing, Lowry assigned the bond and mortgage to the defendant, who resided in Sinclearville. The defendant knew, at the time of his purchase, of the above mentioned conveyances, and the improvements which had been made. In the year 1853 the plaintiff Copp erected improvements on the lot bought by him, of the value of $3000. Before and subsequent to Dewey's purchase from Lowry, there were verbal conversations between him and Hedges in which it was understood that a new mortgage should subsequently be given by Hedges, excluding from its description the parcels of land which had been sold, and that a survey should be made of the unsold lands, the new mortgage including these only. No consideration passed between Dewey and Hedges on account of this understanding, and it was never executed.

In 1856 the defendant stated to one Henry A. Kirk that

Rice *v.* Dewey.

he did not suppose, when he bought the mortgage, that he had any claim on Copp's, Crawford's and other lots sold by Hedges.

Just prior to Merchant's taking his deed from Hedges, in response to an inquiry from Merchant whether he could get from Hedges a good title to his lot, and whether Dewey had any claim upon it, Dewey stated that he held a mortgage on said lot and other lots; that the deed from Hedges would be good, for he, Dewey, would release; that he was going to release several lots, and would release this with the rest. Merchant stated, at the time, that he had paid the purchase price to Crawford. This conversation was never communicated to Copp, who remained without actual notice of the mortgage until 1856. At the time of making their improvements, the other plaintiffs were without personal information of the existence of the mortgage, and the conversations of Dewey with Hedges and Kirk were not communicated to any of the other parties. Neither Lowry nor Dewey held any intercourse with any of the purchasers plaintiffs respecting the mortgage, prior to the commencement of foreclosure proceedings. At the time of the assignment to Dewey he indorsed, on his own bond, the Crawford bond and mortgage as so much payment to him, and the latter were subsequently satisfied by Crawford.

On the 1st of February, 1853, Hedges gave the defendant four notes for the interest on the bond for the year ending January 13th, 1853, which the defendant then stated he would take as payment, and they were receipted on the bond as money. Two of them were paid. The other two, for $65 and $60, respectively, are unpaid. Hedges made a general assignment in 1855, and has been insolvent since. He has for some years resided in Iowa.

September 25, 1852, the defendant received Hedges' notes for the interest for the year ending January 13th, 1852. One note was for $228.18, another was for $1050, and included a

balance of account due to the defendant. These notes were unpaid when due, and the latter was renewed by Hedges. Judgment was obtained against him in 1855 by the defendant, for the full amount, no part of which has been paid. These notes, when first taken, the defendant stated he would take as payment for the interest for the year ending January 13th, 1852, and the amount of such inter- est was receipted on the bond.

The cause was tried before a referee, who found the above facts, substantially, and as a conclusion of law, held that the defendant should be perpetually enjoined from foreclosing the said mortgage as to the lands sold to the plaintiffs Crawford, Brown, Pickard and Copp, and that the amount of the notes received for interest should be excluded from the bond.

*Jas. A. Allen,* for the appellant. I. 1st. The consent by Lowry to sales made by Hedges, implied nothing but con- sent to what Hedges had a right to do without consent. Lowry got no consideration for parting with any interest in the land, and he parted with none. Moreover, he could part with no interest without writing. (2 *R. S.* 316, *4th ed.* §§ 6 *and* 8.) The purchase money was paid to Hedges. No consent of Lowry was ever made known to any of the plaintiffs. 2d. The lands of Copp, Brown and Pickard were not in fact sold by Hedges with the knowledge and consent of Lowry. These lots are not identified in the testimony of Cole. *Non constat,* that Hedges did not, prior to the sale of these, sell other lots to parties other than the plaintiffs, with the knowledge and consent of Lowry. Again; it appears from Cole's testimony that a portion of the purchase money of these other lots, not specified, which were sold with the knowledge and consent of Lowry, was applied towards extinguishing the mortgage. A com- putation made shows that the indorsements on the bond, of Hedges' individual note, the note of himself and brother,

and the two notes of E. F. Warren, were all the payments made on the same before the assignment thereof by Lowry. The evidence of Cole is therefore shown to be incorrect, as no purchase money of other lots went to Lowry. Again; if any other lots were sold with the knowledge and consent of Lowry, which lots, and how many of them were so sold? Were all or but part of the lots in question?

II. The parol promises made to Hedges and Merchant were void as *nudum pactum*, and within the statute of frauds. (2 *R. S.* 316, §§ 6, 8, 4th ed. *Hunt* v. *Maynard*, 6 *Pick.* 489. 5 *id.* 243.)

III. None of the matters set forth as facts by the referee in his findings, constitute an estoppel in favor of any of the plaintiffs. The following is the result of the authorities on this subject: 1st. An estoppel must be certain to every intent, and not to be taken by argument or inference. (*Co. Litt.* 352, *b.* 3 *Hill*, 221. *Heane* v. *Rogers*, 9 *Barn. & Cress.* 577.) 2d. It must consist of an act on the part of the defendant, or of a misrepresentation of an essential fact by him. It cannot grow out of a mere promise, or out of an erroneous conclusion or inference from facts. (*Brewster* v. *Striker*, 2 *Comst.* 41. *Gerrich* v. *Proprietors of Union Wharf*, 26 *Maine Rep.* 384. *Hamlin* v. *Hamlin*, 1 *App.* 141. 1 *Kern.* 73. *Lajoye* v. *Pruman*, 3 *Miss. Rep.* 529.) 3d. The representation must have been designed, when made by the defendant, to influence the conduct of the party to whom made. (*Welland Canal Co.* v. *Hathaway*, 8 *Wend.* 480. *Griffith* v. *Beecher*, 10 *Barb.* 432. 1 *Kern.* 73. *Middletown Bank* v. *Jerome*, 18 *Conn. Rep.* 443. *Kinney* v. *Farnsworth*, 17 *id.* 355. *Brown* v. *Wheeler*, *Id.* 345.) 4th. It must have been acted on by the party in whose favor it is urged, he being induced through it to enter upon a course of conduct which, but for the representation, would have been omitted. (*Lawrence* v. *Brown*, 1 *Seld.* 401. 3 *Hill*, 221, 2, 219. 5 *Denio*, 157. 6 *Adol. & Ellis*, 469. *Ryerss* v. *Farwell*, 9 *Barb.* 618. *Heane* v. *Rogers*, 9 *Barn. & Cress.* 577. 6 *Pick.* 455. *Mid-*

Rice *v.* Dewey.

*dletown Bank* v. *Jerome,* 18 *Conn. Rep.* 443. *Commonwealth* v. *Moltz,* 10 *Barr,* 527.) 5th. The representation must have been made directly to the party in whose favor it is urged, and not to other persons. (*Reynolds* v. *Lounsbury,* 6 *Hill,* 534, *and cases cited.* *Ryerss* v. *Farwell,* 9 *Barb.* 618. 7 *id.* 649. *Averill* v. *Wilson,* 4 *id.* 180.) 6th. The circumstances must be such as to operate to the essential injury of the party to whom the representation is made, if the defendant be allowed to retract or disprove his previous assertion. (1 *Seld.* 401, *and cases cited.* 1 *Kern.* 73. 3 *Hill,* 221.) The statement made to the plaintiff Kirk was not admissible as matter of evidence. It was wholly irrelevant. (*See authorities, supra.*) At the time of Merchant's conversation with Dewey, he had paid the purchase price of his land to Crawford, and so informed Dewey he bought merely Crawford's interest, more or less, in the land, the latter informing him respecting the mortgage. He did nothing after the interview with Dewey except take the deed from Hedges. Merchant was of course better off with the deed than without it.

IV. 1st. A mortgage is an alienation of the realty *pro tanto*, that is, as to the amount of the mortgage debt. (*Kellogg* v. *Rand,* 11 *Paige,* 59. *La Farge Insurance Co.* v. *Bell,* 22 *Barb.* 54.) 2d. The fixtures erected on the mortgaged premises by the plaintiffs attached to the realty when erected, and became subject to the mortgage lien to the same extent as if they had been erected prior to its execution. (*Gardner* v. *Finley,* 19 *Barb.* 317. *Butler* v. *Page,* 7 *Metc.* 40. *Winslow* v. *Merchants' Insurance Co.,* 4 *id.* 306. *Smith* v. *Godwin,* 2 *Greenl.* 132. *Pettingill* v. *Evans,* 5 *N. H. Rep.* 54. *Stillman* v. *Hamer,* 7 *How. Miss. Rep.* 421. *Corliss* v. *McLagin,* 29 *Maine R.* [16 *Shep.*] 115.) 3d. Dewey acquired by the assignment all the title which was vested in Lowry. His knowledge of the sales made by Hedges was immaterial; his knowledge of the improvements made by purchasers, before his purchase, could

Rice *v.* Dewey.

not prejudice him. (*Wood* v. *Chapin*, 3 *Kern.* 509. *Varick* v. *Briggs*, 6 *Paige*, 329.)   4th. The record of the mortgage was constructive notice to all the purchasers. (*Johnson* v. *Stagg*, 2 *John.* 510.   4 *id.* 216.)   Dewey was not bound to give Copp any additional notice when he saw his improvements making.   5th. The several parcels of the mortgaged premises are to be sold in the inverse order of their alienation. (*Gill* v. *Lyon*, 1 *John. Ch.* 447.   *Stevens* v. *Cooper, Id.* 425. *Stoney* v. *Schultz*, 1 *Hill's Ch.* 500.   *James* v. *Hubbard*, 1 *Paige*, 228.   *Governeur* v. *Lynch*, 2 *id.* 300.   *Guion* v. *Knapp*, 6 *id.* 35.   *The N. Y. Life Insurance Co.* v. *Cutler*, 3 *Sandf. Ch.* 176.   *Skeel* v. *Spraker*, 8 *Paige*, 182.   *Patty* v. *Pease, Id.* 277.   *Schryver* y. *Teller*, 9 *id.* 173.   *Commercial Bank of Erie* v. *Western Reserve Bank*, 11 *Ohio* [*Stanton*] *Rep.* 444, 452. *Green* v. *Ramage*, 18 *Ohio Rep.* 428.   1 *Story's Eq. Jur.* §§ 506, 634 *a.*   *Hartley* v. *O'Flaherty*, 7 *Lloyd & Gould*, 216.   *Stuyvesant* v. *Hone*, 1 *Sandf. Ch. R.* 419.   *Stuyvesant* v. *Hall*, 2 *Barb. Ch.* 151.)

V. The plaintiffs have no available equity arising out of their improvements, as against the defendant.   1st. There never was a case in which parties erecting dwellings on land owned by another, or incumbered in his favor, in the absence of fraud on his part, were allowed as complainants in equity to receive from the party invested with the title, the value of their improvements. (*Putnam* v. *Ritchie*, 6 *Paige*, 390.)   The defendant did not come, and did not need to come into equity to foreclose his mortgage; he was pursuing a remedy given by statute.   The right to have the premises sold in the inverse order of alienation is a merely equitable, not a legal right. (*Guion* v. *Knapp*, 6 *Paige*, 35.   *Patty* v. *Pease*, 8 *id.* 284.)   2d. A party voluntarily erecting improvements on land owned by or incumbered in favor of another, whether plaintiff or defendant, is under no circumstances allowed their value where they have been made with *notice* of the adverse title. 3d. The statute provides, in effect, that the record of the

mortgage shall be notice to subsequent purchasers. It prescribes that this record shall be notice for the very purpose of affecting the purchaser with the consequences of actual notice in respect to the land purchased. To say that the law infers the existence of notice from certain facts, is to say that the law intends to infer all the consequences of the actual existence of notice. There can be no distinction drawn, in respect to these consequences, between personal notice and that notice which is given by a compliance with the statute. To attempt such a distinction, is to put a premium on negligence, and to break down and destroy the statute. (*Johnson* v. *Stagg,* 2 *John.* 523, 524. *Jackson* v. *Dubois,* 4 *id.* 220.) 4th. Good faith cannot be predicated of a party guilty of gross negligence. The plaintiffs were guilty of gross negligence in erecting their improvements without having examined the records. 5th. The same reason which compels the mortgagee to suffer the loss arising from depreciation of the property, allows him the benefit, on the other hand, of all accessions to it. This principle is founded in the broadest justice. Dewey paid the face of the mortgage to Lowry. Soon after, Hedges began the erection of valuable improvements which Dewey supposed wholly on the mortgaged premises, but which were not so. Hedges failed. The property subject to the mortgage depreciated. The plaintiffs sought to set aside the mortgage for usury. The question was decided adversely to them in 1858. Interest has been accumulating while the unsold premises have lessened in value. While equity cannot avert the decay of the premises, neither does it, on the other hand, take away from the holder of the security such compensatory accessions to the property as may come to it. *Equitas sequitur legem.*

IV. The amount of the two unpaid notes ($65 and $60) for interest for the year 1852 must be allowed the defendant. The receipts on the bond are nugatory when they are once explained. (8 *Wend.* 535. 5 *John.* 68.) The

law is well settled that a promissory note of the debtor for a precedent debt, without new consideration moving between the parties, cannot become a satisfaction of the debt, though agreed to be taken as such. It is but a cumulative promise founded on a liability already subsisting. (15 *John.* 247. 1 *Hill,* 516. *Hughes* v. *Wheeler,* 8 *Cowen,* 77. 21 *Wend.* 452, *and cases cited.* 5 *Hill,* 449.) It was not necessary for the defendant to produce the notes on the trial, as the obligor was not a party to the action, the same being brought by the plaintiffs for the purpose of ascertaining the true amount due on the bond. The notes were at the time outlawed. Hedges was insolvent and a non-resident. To have canceled the notes would have been an idle proceeding.

VII. The same proposition is true in respect to the notes for interest for the year 1851. One of the notes ($228.18) went directly into the judgment. The other note, for $1050, was taken up by Dewey, and new notes given therefor by Hedges, on which last judgment was rendered. The number of renewals is immaterial; they were still the debtor's own notes, and not payment of the debt on bond. Neither did the judgment extinguish the bond debt. (2 *Hill,* 339. 11 *John.* 513.) The notes were collateral to the bond, and the judgment was no higher security than the specialty. The nature of the action obviates any objection relating to the section of the Revised Statutes (2 *R. S.* 256, § 64) respecting bills for foreclosure. This section, if not repealed by the Code, has no application to a case in which the parties to be charged are plaintiffs. Themselves seeking equity, they must submit to the plenary exercise of the court's equity powers. (1 *Barb.* 362. 7 *Paige,* 451. 11 *id.* 386. 1 *Story's Eq. Jur.* §§ 64 to 66, 71. 2 *John. Cas.* 424. 10 *id.* 587, 596. 17 *John.* 384. 1 *John. Cas.* 414.)

VIII. It is not claimed that the land of Crawford is liable beyond the $200 paid to Hedges. The sum of

$675 applied on the Lowry mortgage exonerates the land *pro tanto.*

IX. It cannot be necessary that the parties should be burdened with a new trial in this case. The court should modify the judgment, by directing a sale of the whole premises, subject to the mortgage, in their proper order.

*Hazeltine & Clark,* for the respondents.

*By the Court,* GROVER, J. The determination of. this case will be facilitated by considering the rights of the purchasers from Hedges collectively, in the first instance. These purchases were made while the defendant's mortgage was owned and held by Lowry. It is necessary first to ascertain whether the purchasers have shown a right to have their lands respectively discharged from the lien of the mortgage at the time of its transfer from Lowry to the defendant. If they had such right against Lowry, at the time, it is equally available against the defendant as assignee of Lowry. He took the mortgage subject to all defenses that existed against it in his hands. It must be borne in mind that it is against the defendant that it must be shown that the purchasers had a defense to the mortgage while owned by Lowry, and at the time he transferred the same to the defendant. This renders the admissions of the defendant competent evidence of any facts tending to establish such defense. The referee finds that the sales were made by Hedges to the respective purchasers, and the considerations therefor received by Hedges with the knowledge and consent of Lowry while the owner of the mortgage. Whether the referee based his judgment upon this fact, or upon the other facts found by him, does not distinctly appear; nor is it material, if this or any other facts found by the referee will warrant the judgment rendered. The referee also finds that Lowry did not consider the mortgage a lien upon the respective parcels so

Rice *v.* Dewey.

sold by Hedges. There is no dispute that those parcels are covered by the mortgage, and that they were originally subject thereto, and of course they so continued, unless by some act of Lowry they were discharged. Whether Lowry considered them subject to the lien is wholly immaterial, except so far as it may be evidence of some agreement, act, or omission on the part of Lowry, discharging the lien. Hedges, as mortgagor, had the right to sell the lands in such parcels as he chose; and knowledge by Lowry that he was making such sales, and receiving the consideration therefor, would not discharge the lands sold from the mortgage. When Lowry had carried his mortgage to be recorded he had done all that was required of him to preserve his lien; and all persons purchasing from Hedges subsequent thereto, were bound at their peril to investigate the title and take notice of the mortgage. If they neglected this, it was their own fault, and neither law nor equity can relieve them from the consequences of the omission. This rule must be strictly adhered to, or incumbrances upon real estate will no longer constitute safe investments. I confine these remarks alone to the fact that the sales were made with the *knowledge* of Lowry. It is also found that they were made, and the consideration received therefor, by Hedges with his *consent.* By this finding I apprehend that something more was intended by the referee than the mere non-action of Lowry to prevent the sales. He could do nothing to prevent the sales, other than to proceed to foreclose the mortgage if there was any thing due thereon. This he was not bound to do. He had a right to presume that the purchasers had examined the records and knew of his mortgage, and that they were satisfied with the covenants of Hedges, as to title, and with their equitable right to have the lands embraced in the mortgage remaining unsold first applied to the satisfaction of the mortgage, or had obtained other security against the lien. The referee

probably intended, by the finding, that Lowry had entered into some agreement respecting his lien, whereby the lands purchased were discharged from the lien. He does not find what this agreement, if any, was. This renders it necessary to look into the evidence to ascertain whether Lowry had made any, and if so, what agreement respecting it. This evidence consists mainly of the declarations of the defendant. It is shown that the defendant said he did not suppose his mortgage was a lien upon lots sold by Hedges, when he purchased the mortgage. This declaration is of no consequence except as evidence tending to show an agreement or act of Lowry discharging the mortgage. That he told Merchant that he would release the parcel contracted by Hedges to Crawford, whose interest Merchant had acquired. That Hedges' deed for said parcel would be good, and that he was going to release several lots, and would have it all done at once. The declaration that he was going to release several lots is only evidence from which it may be inferred that Lowry or the defendant had agreed to release the lots in question, provided such inference is warranted by the other evidence in the case. Standing alone it amounts to little or nothing, so far as the plaintiffs, other than Copp, who has succeeded to Merchant's title, are concerned, being equally consistent with the idea that the defendant considered the unsold land sufficient security, and therefore was willing voluntarily to discharge these parcels from the lien. It was further proved that the defendant told Cole that the description of the mortgage embraced lots in the possession of others. That Hedges had sold these lots by an arrangement and with the consent of Lowry, when Lowry owned the mortgage. This evidence is not more certain than the referee's finding. It does not show with whom an agreement by Lowry was made to discharge any land from the lien, nor upon what consideration or conditions such release was to be given. The purchasers were witnesses

Rice *v.* Dewey.

in the case, and they none of them claim to have made any agreement, themselves, with Lowry. On the contrary, they testify that they knew nothing of the mortgage. Hedges is a witness for the plaintiffs, (and from his deposition there is no reason to believe an unwilling one,) and he is silent as to any agreement made between himself and Lowry, or any release. He testifies that he was present at the purchase of the mortgage by the defendant of, Lowry, and yet not one word do we hear of having been said about any release of lots sold by Hedges. That he did not wish him to consider the lands sold any part of the security if he purchased the bond and mortgage. That the defendant told him he considered the unsold land amply sufficient to secure the amount due on the bond and mortgage. This is utterly inconsistent with the idea that Lowry had discharged the lots in question by an agreement with Hedges. I think the evidence fails to show the release of any of the lots by Lowry while the owner of the mortgage, or any act affecting the lien upon any parcel except the one conveyed to Crawford. It follows, then, that at the time of the transfer of the mortgage by Lowry to the defendant, it was a lien upon all the lands sold by Hedges, except the parcel sold to Crawford. We must then examine and see whether the defendant has released any of the lands, or has estopped himself from asserting a lien thereon by his acts and declarations.

No release by him to any of the plaintiffs is claimed. Hedges testifies that the defendant was informed of the lots sold by him, at the time he purchased the mortgage. This is clearly immaterial. By the purchase he acquired Lowry's rights, and we have seen that knowledge by Lowry of the sales made by Hedges would not estop him, and of course it would not estop the defendant. Hedges also testifies that he made an arrangement with the defendant by which he was to execute a new bond and mort-

gage to him, leaving out the parcels sold. The defendant does not in his testimony deny this. It does not appear that there was any consideration for this. Indeed it appears that there was not. This, then, so far as Hedges and the defendant are concerned, is a mere verbal contract in regard to an interest in real estate, based upon no consideration, and in no part performed. It requires no argument to show that such a contract is wholly nugatory, so far as the parties thereto are concerned. This arrangement does not appear to have been even communicated to the plaintiffs, and I do not see how, if it had been, it could avail them, unless it was shown that they proceeded to invest their means upon the expectation of its performance, to the knowledge of the defendant. In that event, silence on his part, while the plaintiffs or either of them were expending their money, would have been fraudulent. This arrangement between Hedges and the defendant cannot aid the plaintiffs. The defendant's knowledge that some of the plaintiffs were making improvements upon the lots conveyed to them by Hedges does not estop the defendant. As remarked above in regard to Lowry, the defendant had a right to presume that the plaintiffs had examined the records and knew of the mortgage, and had obtained security satisfactory to themselves against the lien. Any other rule would wholly fritter away the recording acts. No case can be found holding that a mortgagee whose mortgage was duly recorded, lost any right by neglecting to give personal notice of his mortgage, to a purchaser from the mortgagor. This is not at all analogous to the class of cases where one having the title to land himself knows that another, ignorant thereof but believing himself to be the owner, is proceeding to erect improvements thereon, and the real owner conceals his title from him, or remains silent in relation thereto. An *estoppel en pais* arises when a party has made representations, or done acts, to influence the conduct of an-

Rice *v.* Dewey.

other by inducing a belief of a given state of facts when such party, having acted upon such belief, would be injured by showing a different state of facts. (*The Welland Canal Company* v. *Hathaway*, 8 *Wend.* 480. *Ryerss* v. *Farwell*, 9 *Barb.* 618.) Testing the acts of the defendant by this rule, the evidence comes short of showing any estoppel against him, except as to the land conveyed to Merchant, which will be noticed hereafter. The defendant concedes that the land sold by Hedges to Crawford is only liable for the balance of the purchase price, after deducting the amount of the mortgage thereon, transferred to Lowry and by him to the defendant, and by the latter indorsed upon the mortgage in question. Under the facts of this case I think this parcel liable for such balance, with interest thereon. There is no evidence of any agreement by the holders of the mortgage, in relation to this parcel, except what is to be inferred from the receipt of the mortgage by Lowry. Upon a sale by the mortgagor, equity exonerates the land sold from the lien of the mortgage to the extent only that the purchase money has been applied upon the mortgage. It is unnecessary to discuss at any length the equity of Copp in the parcel conveyed to Merchant growing out of the facts testified to by Merchant, as the referee has not passed upon these facts. The case shows that evidence was given tending to impeach Merchant and to sustain him, and how the referee would have determined does not appear. I will add that if upon another trial facts should appear estopping the defendant as to this or any other particular parcel, the defendant, so far as lands conveyed by Hedges, prior to the creation of such estoppel, are concerned, must be charged with the value of the lands at the time he so estopped himself from asserting the lien. The plaintiffs claim that in case lands sold and conveyed by Hedges are charged with the mortgage, they are only to be charged

with their value exclusive of improvements made by the purchaser.

. No such rule has ever been applied between mortgagees and purchasers from the mortgagors, in this State. The reverse is the law. I regret that in this case the operation of the rule may be somewhat harsh upon some of the plaintiffs; but the court has no more power to change or modify the established rules in equity than in cases of legal cognizance. Improvements that constitute a part of the realty, irrespective of the question by whom made, are equally subject to the lien of a mortgage as the land upon which they are made.

The only remaining question is as to the amount due upon the mortgage. The dispute upon this point arises upon the notes of Hedges received by the defendant on account of interest due upon the bond. The referee has found that the notes were agreed to be taken as payment, by the defendant. It is well settled that a new promise to pay is no defense to an action brought upon the original obligation, although expressly agreed to be taken as payment, (*Waydell* v. *Luer*, 5 *Hill*, 448, *and cases cited*,) the reason being that there is no consideration for the promise to receive the new promise in payment. When this reason does not apply, the rule no longer prevails. If any new or additional security or other benefit is obtained by the plaintiff, or any detriment sustained by the defendant, by the new agreement, the defense is perfect. Apply the rule to this case. The notes were given for interest due. This interest, by the well settled rules of law, did not draw interest. The notes were given upon interest. Thus a demand not drawing interest was converted into a debt on interest. This was a benefit to the defendant, and the very benefit, as the case shows, the defendant was seeking. I think this is a good consideration for the agreement of the defendant to accept the notes in payment. This would not apply to a debt already

Rice *v.* Dewey.

upon interest. It follows that the referee did not err in holding that the notes, although not in fact paid, operated as a defense to that portion of the defendant's claim. It is not an answer that the defendant was presently entitled to receive the money, and that its present receipt would have been equally beneficial to the defendant as notes upon interest. This might or might not have been so.

In the above remarks I must not be understood as expressing any opinion upon the controverted question of fact, whether the defendant expressly agreed to receive the notes in payment. This must be determined from the proof. The defendant's counsel insists that instead of ordering a new trial, the court shall modify the judgment. This we cannot do. The case contains only the exceptions on the part of the defendant. To modify the judgment prejudicial to the plaintiffs without giving them a new trial would be error. This has repeatedly been so held by the Court of Appeals.

The rule as to the order of sale is so well settled that I shall not discuss it.

There must be a new trial; costs to be determined by the final judgment.

[ERIE GENERAL TERM, February 10, 1862. *Marvin, Davis* and *Grover*, Justices.]