## HURT v. RIFFLE and others.*

(*Circuit Court, D. Indiana.* May, 1882.)

ESTOPPEL IN PAIS—REPRESENTATIONS.

A party is not estopped from asserting a right belonging to him against another party unless he has made a representation or concealment in a matter of fact important to the interest of the other party upon which the other party was authorized to rely, and in fact did actually rely, to his prejudice. A mere expression of opinion, upon facts equally known or open to both, is not a representation upon which a party has a right to rely within the meaning of the doctrine of estoppel.

*Paul & Humphreys* and *Cropsey & Cooper*, for plaintiff.
*Herod & Winter*, for defendants.

GRESHAM, D. J. The plaintiff in this suit seeks to be subrogated to the benefit of a mortgage and have it foreclosed. George W. Riffle and George Westfall executed their joint note to Lampson Reed, for $1,000, payable in 12 months. Westfall was Riffle's surety, and to save him harmless the latter executed the mortgage sought to be foreclosed. This mortgage was duly recorded on the eighteenth day of June, 1877. On the eleventh day of July, 1877 Abraham Ackerland and Lewis Wyler obtained judgment in this court against Riffle for $1,000, and on the twenty-first of February, 1878, Riffle sold and conveyed to Hurt, the plaintiff, for $1,200, the real estate described in the mortgage to Westfall. Hurt paid the purchase money, except $739, to Riffle, and the latter sum Hurt paid on the debt due to Reed by Riffle's direction. Hurt bought the lot and paid the purchase money in full, not knowing that Ackerland and Wyler and others had taken judgment against Riffle, and supposing that Westfall's mortgage was the only lien on the land. An execution was issued on Ackerland and Wyler's judgment, which, by direction of their attorneys, Herod & Winter, was levied upon 240 acres of land in White county, the land conveyed to Hurt, and certain other real estate. After the marshal had advertised all this real estate for sale, the following correspondence occurred:

"INDIANAPOLIS, April 14, 1879.

"*Squire L. Gilkey, Esq., Waynetown, Indiana*—DEAR SIR: We are the attorneys for Ackerland and Wyler against George W. Riffle, and we are informed that you purchased of Riffle in-lots 2 and 3, upon which our judgment is now the first lien. We have found some land in White county belonging to Riffle,

*Reported by Charles H. McCarer, Asst. Dist. Atty.

upon which there is a mortgage, which we propose to sell at Monticello on May 7th. We do not want, if it can be avoided, to bother the property which you and Mr. Hurt bought, and thought it would be proper for us to suggest to you and Mr. Hurt that you attend the sale at Monticello and buy the 320 acres of land at a small bid, and then pay us the balance of the judgment and we will assign it to you. The land, we understand, is valuable,—sufficient to fully save you harmless against any loss. The course indicated will pay our debt, give you the land, and fully protect your title against all other claims; otherwise we are compelled to sell the property of yourself and Mr. Hurt on May 8th. Will you do us the favor to show this letter to Mr. Hurt, as what we suggest is intended for him too. We trust that you may see this mode to be the one for you to adopt and act accordingly, as it will be a matter of regret to us that we should be compelled to take your property that you have once paid for. Let us hear from you and Hurt before sale, if possible.

"Yours, respectfully, HEROD & WINTER."

"WAYNETOWN, INDIANA, May 3, 1879.

*"Herod & Winter:* In answer to your letter of the fourteenth of last month, I do not think I will be at the sale of Riffle's land on the 7th. We are not able to make a purchase, and, another thing, I do not wish any more encumbered property, and the way the thing now stands I believe it will be cheaper to me to let my property sell than to try and save it. I bought it in good faith, *taking* Riffle's word that there was nothing against it. We have already settled off two judgments, and there is this judgment, and that is not all; so I see but little chance for us. There are other unsatisfied claims. You will please excuse me for not writing sooner. I wrote to Riffle and have been waiting for an answer. I wished to hear from him before I wrote to you.

"Yours, truly, ABSOLOM HURT."

Mr. Herod, of the firm of Herod & Winter, appeared at the sale of the White county land and bid it in for the execution plaintiffs for $15, and on the day following he appeared and bid in for his clients the land conveyed to Hurt, for $900, and his firm receipted the execution for that amount as attorneys for the judgment plaintiffs. After the sale, but before the marshal had made a written memorandum or return of it, and while Herod and the marshal were still at the place of sale, Hurt made his appearance for the first time, and told Herod that during the year for redemption he would make up his mind as to what he would do. Neither at this time nor prior thereto had Herod or his partner, or either of the execution plaintiffs, actual knowledge of the Westfall mortgage, or that Hurt had paid part of the debt due from Riffle and Westfall to Reed. On the day of the last sale, and before it occurred, Herod examined the judgment records, and found two unsatisfied judgments against Riffle, which were junior, however, to the judgment of Ackerland and Wyler. But he neglected to examine the records of the recorder's

office, where he would have found the Westfall mortgage unsatisfied. It was not until four or five weeks after the sale that Hurt employed the counsel who brought this suit. Mr. Herod testified before the master that he bid in the property at both sales, for the execution plaintiffs, on the faith of Hurt's letter to his firm. The master found, on these facts, that Hurt was estopped from asserting against Ackerland and Wyler any right he had acquired under the Westfall mortgage by paying part of the debt due to Reed; and to this finding Hurt excepted.

It is urged for Ackerland and Wyler that Hurt's letter prevented their counsel from examining the records of the recorder's office, where they would have found the Westfall mortgage; that the fair inference to be drawn from that letter was that Hurt had no lien on the property superior to that of the execution plaintiffs; and that the execution would not have been receipted for $900—the amount of the bid—if Hurt had asserted his right under the mortgage, or had mentioned the fact that there was such a mortgage before the execution was receipted. Herod & Winter were informed by Hurt's letter that he had paid off two judgments which were liens on the land, and that in addition to the judgment which they represented there were still other unsatisfied claims against the land. Other unsatisfied claims might have been mortgages as well as judgments, and yet the sale was made without any examination of the mortgage records. Hurt was authorized to assume that Herod & Winter had actual knowledge of all recorded liens against the property, which was soon to be sold under their direction, by the marshal, to satisfy the judgment in favor of Ackerland and Wyler. Hurt sustained no such relation to the execution plaintiffs, or to their counsel, as compelled him to take any notice whatever of their letter to Gilkey and himself, and there was nothing in his letter in reply which justified Herod & Winter in assuming, without examination, that the lands levied upon were free of mortgage liens. Hurt may have thought, and he no doubt did think, that he was dealing with men who were more than his equals in legal knowledge, and who were more anxious about the interests of their clients than his welfare. When Hurt replied to Herod & Winter's letter he had not employed counsel, and it is not probable that he then understood his rights under the Westfall mortgage. The facts of the case do not justify the belief that he intended or expected his letter and conduct to deceive or mislead Herod & Winter. Hurt is not estopped from asserting his rights under the Westfall mortgage, unless he made a

representation or concealment in a matter of fact important to the interests of Ackerland and Wyler, upon which Herod & Winter were authorized to rely, and upon which they did actually rely, to the prejudice of their clients. No mere opinion that Hurt expressed could be relied on, and the recorded mortgage was a fact equally open to all. Finding, as they should have done, this mortgage unsatisfied, and prior to the judgment of Ackerland and Wyler, Herod & Winter would, on inquiry, have learned that Hurt had paid part of the debt due from Riffle and Westfall to Reed. It was unsafe and unreasonable, and therefore unauthorized, for the counsel to bid off the property described in the mortgage for their clients, relying upon anything that Hurt said or did, or failed to say or do. And admitting that Mr. Herod made the bid and receipted the execution in the manner and for the reasons stated, it does not appear that Hurt's conduct induced Herod & Winter to alter their position to the injury of their clients. It is not shown that there was other property subject to the execution, or that the judgment was replevied. *Hefner* v. *Vandolah,* 57 Ill. 520; *Rice* v. *Dewey,* 54 Barb. 455; *Bayles* v. *Perry,* 51 Mo. 449; *Palmer* v. *Williams,* 24 Mich. 328; *Freeman* v. *Cooke,* 2 Ex. 654; 11 Allen, 349.

Exceptions sustained.