## COURT OF COMMON PLEAS OF LUZERNE COUNTY.

# Kulp *versus* Ricketts.   Chase *versus* Ricketts.   Davenport *versus* Ricketts.

The fifth section of the act of March 3, 1863, authorizing the removal of certain cases from the State to the Federal courts for trial, is constitutional.

Rule to show cause why the above cases shall not be removed to the United States Circuit Court.

CONYNGHAM, P. J.—The argument upon the part of the plaintiffs in the present actions, in opposition to the rules to show cause why the cases shall not be removed into the United States Court, has taken a very wide range, and under other circumstances, when and where the cases are finally tried, will be entitled to very considerable attention and consideration. The character of the arrests made by Mr. Ricketts, and the constitutionality of the act of Congress of March 3d, 1863, will then require of the proper court clear and distinct opinions: at this time it is only necessary for this court to refer to them, so far as may be important for the disposition of the rules now before us.

The matters now produced show that the several plaintiffs, Messrs. Chase, Kulp, and Davenport, were arrested by Mr. Ricketts, then chief of police of the borough of Wilkesbarre, by virtue of an order from Edwin M. Stanton, Secretary of War, and claimed to be by direction of the President, for endeavoring to prevent, and discouraging volunteer enlistments in the army of the country. Upon the return to writs of *habeas corpus* issued in such cases, showing these alleged facts, the writs were dismissed on the ground that the habeas corpus act had been suspended without inquiry into the validity of the arrest, or the legality of the cause of complaint; the court then saying that the parties still had their remedy by action, and that the alleged suspension, if invalid, would aggravate the damages.

These several cases being pending in this court on the 25th of March, 1863, at the first session of the court after the passage of the act of 3d March, 1863, Mr. Ricketts made application by petition to remove the cases into the United States Court, and these rules to show cause, which have been now argued, were granted thereupon.

An objection is taken to the form of the petition of the present defendant; because it is said he does not more fully set forth the particular character of the complaint at the time of the arrests, the acts and declarations of the parties arrested, which are claimed to have been intended to discourage enlistments, or that he was chief of police of the borough of Wilkesbarre—that he does not, within the meaning of the 5th section of the act of March, 1863, above cited, set forth "the facts" upon which he rests his application. He does, however, set forth, verified by affidavit, enough to bring the cases within the provisions of the act—that the actions are brought for trespass or wrongs done, and for imprisonment, under authority derived from and exercised under the President of the United States, and he further shows the authority by which he, as chief of police, did act. This, we think, substantially sets forth "the facts," sufficient, at any rate, with the other circumstances shown upon the hearing, if there be nothing else in the cases to prevent it, to require the court to act in the premises.

[Kulp *v*. Ricketts.　Chase *v*. Ricketts.　Davenport *v*. Rickctts.]

The facts appear sufficiently to show that the act of Congress applies to the cases.

The question, then, presented for our consideration is, whether the courts of the United States, under the authority of an act of Congress, can claim any jurisdiction over the cases now before us. If they are simply actions of trespass by one citizen of Pennsylvania against another, those courts have so far jurisdiction ; they properly belong to the courts of the State, and must there remain for trial. The 2d section, 3d article, Constitution of the United States, defines the United States judicial power, and limits the cases to which it extends. These are the words of the first part of the section : "The judicial power shall extend to all cases, in law or equity, arising under this Constitution, or the laws of the United States," &c., so far only is it necessary to quote. By the 2d provision of this section, in all such cases, "the Supreme Court shall have appellate jurisdiction, both as to law and fact, and with such exceptions, and under such regulations, as the Congress shall make." One of the counsel for the plaintiffs, in arguing this matter, contended that this appellate jurisdiction referred only to the ordinary proceeding by writ of error after judgment, and could not be held to apply to the removal of causes before trial ; in this, however, he is clearly mistaken. The point has too often been decided to need any argument from us to sustain a ruling adverse to this argument of the counsel. We refer to the able and elaborate opinion of the Supreme Court of the United States, in the case of *Martin* v. *Hunter*, 1 Wheat. 304 (3 Cond. Rep. 531). The whole doctrine is there reviewed, and the substance of the opinion is that when the case is one over which the United States courts have jurisdiction, that this appellate jurisdiction of these courts apply, either by writ of error to, or when so directed by Congress, by removal of pending cases from the State courts originally taking jurisdiction of the case, which, in such circumstances, are subordinate to the United States, so far as this constitutionally delegated authority. As the court in the cited cases say, "Such a right cannot be deemed to impair the independence of State courts. It is assuming the very ground of controversy to assert that they possess an absolute independence of the United States. In relation to powers granted, &c., to the United States, they are not independent—they are expressly bound to obedience by the letter of the Constitution." Again, by the 2d clause of the 6th art. Cons. U. S., it is provided that "this Constitution and the laws of the United States, which shall be made in pursuance thereof, &c. &c., shall be the supreme law of the land ; and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding ;" and the official oath of all State judges binds them to obey this provision of the Constitution, whatever may be their individual feeling as to its operation upon the claimed rights of citizens, or the action of State courts. Where the cases involve questions dependent upon the construction of the Constitution or laws of the United States, their courts, regulated and directed by act of Congress, may exercise the appellate jurisdiction, either by writ of error or the removal of the pending causes. We refer also to the opinion of Chief Justice Marshall, in *Cohens* v. *The State of Virginia*, 6 Wheat. 264 (5 Cond. Rep. 98.) See also *Matthews* v. *Zane*, 4 Cran. 382 ; and *Burt* v. *Van Ness*, 8 Wheat. 312 ; *Baxley* v. *Linah*, 4 Har. 243; *State of Ohio* v. *Hinchman*, 3 Cas. 483.

This right to remove pending causes from the State courts was recognized in the judiciary act of the 1st Congress, approved 24th Sept., 1789, sec. 12, almost contemporaneous with the adoption of the Constitution, and has continued to be the undisputed law for very many years. That statute provided, as the act lately passed, that after the required forms had been complied with, the State courts in pending cases "shall proceed no further in the cause ;" making this obligation upon the part of the judges

[Kulp *v.* Ricketts.   Chase *v.* Ricketts.   Davenport *v.* Ricketts.]

of the State to stop all further proceedings then, and now the same under the later act, absolute and peremptory, if the case properly fall within the power of the act of Congress.   In "*Gordon* v. *Longest*, 16 Peters, 97, it is decided that the defendant being entitled to have a cause removed under the laws of the United States, on the facts of the case, the judge of the State court has no discretion to withhold that right, and that after the proper application made, and the facts shown, it is the duty of the court to proceed no further in the causes ; and that every step subsequently taken in the exercise of jurisdiction, whether in the same court, or in the State Court of Appeals, is *coram non judice* and void." Decisions analogous in principle, by our own Supreme Court, may be found in *Hughes* v. *Railroad Co.*, 6 Casey, 518 ; and *Railroad Co.* v. *Cummings*, 8 Watts, 450. This is the law, and as a case has been made out, over which, under the Constitution or laws of the United States, the courts of the United States have appellate jurisdiction, and to which the provision of removal under the late act of Congress applies, further action towards the trial of the cases in this court would be without jurisdiction, *coram non judice* and void.

It is true that the act of '89 referred only to the removal of cases where the United States judiciary could claim jurisdiction by reason of the *parties* to the suits.   But the enumeration of the grounds of jurisdiction in the 2d section, 3d article Constitution of the United States, places cases arising under the Constitution or the act of Congress on precisely the same footing as controversies " between citizens of different States ;" both falling under the class of appellate jurisdiction.   If these two sets of cases, then, are *pari passu*, and if a removal can be ordered in the one, it surely may be so in the other.   Thus says Ch. J. Marshall, in *Cohens* v. *Virginia*, cited above :  " In one description of cases the jurisdiction of the court is founded entirely on the character of the parties : and the nature of the controversy is not contemplated by the Constitution ; the character of the parties is everything, the nature of the case nothing.   In the other description of cases, the jurisdiction is founded entirely on the character of the cases, and the parties are not contemplated by the Constitution.   In this the nature of the case is everything, the character of the parties nothing."   The jurisdiction over the present cases arises, if it exists at all, from the nature of the cases, and also from the character of the parties.

" In all cases where the judicial power of the United States is to be exercised, it is for Congress alone to furnish the rules of proceedings to direct the process, to declare the nature and effect of the process, and the mode in which the judgments consequent thereon shall be executed.   No State legislature or State court can have the slightest right to interfere, and Congress is not even capable of delegating the right to them."   3 Stor. Cons. S. 1752.   Neither can the jurisdiction be denied, because in this case, as it appears, there are alleged trespasses by one citizen of the State upon others, which are to be tried with other questions dependent upon the general principles, over which a State court has full jurisdiction. 3 Stor. Cons. S. 1644.

If there is also in the cases a question, arising by way of defence or otherwise, to be determined upon the construction of the Constitution or the validity of an act of Congress, though the other general principles be the foundation of the cases, yet this paramount and overriding principle, which can be finally decided by the United States courts, if either party so desire, will give jurisdiction to such courts, and require us to send the cases there for trial, if so directed by an act of Congress.   Unless specially forbidden, the State courts may decide such questions in the first place, their opinions being subject to review, on a writ of error, from the Supreme Court of the United States when adverse to the claim under the Federal authorities ; but when an act of Congress says the State courts shall not decide the question at all, but provides another tribunal under its authority to receive the

[Kulp *v.* Ricketts.   Chase *v.* Ricketts.   Davenport *v.* Ricketts.]

case, the State court is also thereby forbidden to proceed further.   It must be remembered that the law we are asked to carry into effect only removes the cases for trial into another court; the same facts and the same law are there to be disposed of before United States judges of high judicial character and standing.   This act does not direct the arbitrary dismissal of the actions of the several plaintiffs, but merely orders a change of the jurisdiction and locality for their final disposition.   Whatever may be the effect of the 4th section of the act of March, 1863, the *legal* effect, if truly declared, must be the same in this, our court, as in the court to which a removal is asked; the act of Congress is equally binding, if binding at all, upon judges of the State and United States courts, and the opinions of each court upon such a question, must be equally subject to review by the Supreme Courts of the United States, the first tribunal for resort upon such legal questions, where the decision of the State court is adverse to the right claimed under the laws of the United States.

We may further state that, if it appear that these questions must arise in the cases depending upon the construction of the Constitution of the United States, or the constitutionality and validity of an act of Congress, it is not our duty to give any opinion now upon such questions.   Congress have said, and, as we have shown, have the right to say that if such questions do arise, the action of this court must stop, and further proceeding be alone had in United States courts, under the Constitution of the United States, to us and all the paramount law of the land, in matters controlled thereby.   We say this as to questions which, from the alleged facts, will plainly arise upon the trial of the cases.   We do not mean to say that if no such questions can arise, though the words of the act of Congress may be all comprehensive; if, for instance, it was but an ordinary case of trespass between man and man, over which the United States courts sought to obtain jurisdiction directly in the very face of the Constitution, that we would remove such a case; we would not do so, and if a constitutional intent could not be ascertained under the words of the act, we would not regard it as obligatory, but would declare it without hesitation unconstitutional, for the Constitution is as binding upon Congress as it is upon ourselves.   The extended and able argument of the counsel of the plaintiffs before us, as to the constitutionality of the grounds of defence, which will arise upon these trials, is of itself satisfactory to show that they fall under the constitutional power of congressional direction as to the tribunal and *forum* of the trial; for they do involve grave constitutional questions.   We have deemed it necessary to refer to these general principles of our law at considerable length, because the defendant permitted the elaborate argument upon the part of the plaintiffs as to the validity of this act of Congress, to remain almost unanswered.

It remains then for us to inquire whether any of these jurisdiction giving questions will arise.   The defendant in the present cases claims that, as chief of police of the borough of Wilksbarre, he made the arrests complained of in these actions, by virtue of an authority from E. M. Stanton, Secretary of War, emanating, as he contends, from the President of the United States.   By the act of 7th August, 1789, 1st Stat. at Large, 49, an executive department of war is established, and the chief officer therein called the secretary, is to act there under the President.   It is impossible for the President to act in every case in each department personally, and therefore the law necessarily recognizes his acts when done by his proper subordinate officer.   See the case of " *Williams* v. *the United States,* 1st How. 290."   Under the proper circumstances the acts of these officers may be considered under the Constitution, those which are performed by the President; at any rate it will not answer to presume that the President cannot be responsible for them.   Under this situation of matters, and from what we know from the history of the days of the last two years, and from

[Kulp *v.* Ricketts.   Chase *v.* Ricketts.   Davenport *v.* Ricketts.]

the nature and current of the indemnity act so called, now under considera-
tion, passed by Congress and approved by the President, we can see no
difficulty in saying that the question will arise, whether the alleged tres-
passes were not done " by virtue or under color of authority derived from, or
exercised by, or under the President of the United States." It is denied
that the President had the right under the Constitution, and the powers
vested in him thereby, to issue this process. This may be so; if it was neces-
sary for us to decide this question, we should have no great trouble in de-
ciding it; but this is not now a question for us, it must be the duty of this
court at another time, or of another court to decide it. It is claimed for him
that under his powers as President, as commander-in-chief of the army, and
we suppose, under the 2d sect. act of 17th July, 1862, Stat. at Large,
1861–2, page 590, the present plaintiffs were intended by the process to be
charged with giving " aid and comfort to the enemy" by discouraging en-
listments in the army. Upon the other hand, the 4th article to the amend-
ments to the Constitution may be referred to, as creating doubt with
regard to the President's power to issue, or cause to be issued, such pro-
cess. If we should say that in our opinion he had no authority to cause
this process to be issued, and therefore condemn the arrest, it would be
merely giving an opinion *now*, and would not be saying that the question,
whether he could lawfully do so or not, will not arise in whatever court
these suits are hereafter to be tried before a jury. In the late case of
*Hodgson* v. *Millward, ante,* removed under this act of Congress, by Judge
Strong of our Supreme Court, the illegality of the act claimed to have been
done by the authority of the President, had not only been decided by the
Circuit Court of the United States, but also upon the trial of the very
cause at nisi prius, before Chief Justice Lowrie, yet Judge Strong held that
the case must still be removed. This could have been done only upon the
principle that though the process had been held to have been unauthorized
and invalid by the President under the Constitution and laws of the United
States, in the courts which had previously considered the case, yet inas-
much as the case was still pending, and the act complained of was claimed
to be under color of authority from the President, the act of 1863 would
still require its removal to the court of the United States, which was the
proper place to adjudicate such a question.

Again, as a matter of aggravation in the present cases, it has been and
will again be contended on the trial of these causes, that the alleged sus-
pension of the writ of habeas corpus was used by the defendant, under the
authority of the government, to lengthen and continue the imprisonment
of the present plaintiffs. This will raise the question, which has been so
extensively considered and debated, as to the authority of the President
under the Constitution to suspend that writ. This is really a question de-
pendent upon the construction of the Constitution, which this court will
not now undertake to decide, but which will arise upon the trial of the
causes. If this be so, is it not clear that these cases still present questions
to which the jurisdiction of the judiciary of the United States attaches, and
which, in this appellate mode, must be tried in that court, if Congress has
so directed? The attorney-general of the United States has contended
that the President does possess this power of suspension, other eminent
lawyers have elsewhere held the same opinion, while other gentlemen of
high judicial character and reputation as lawyers, have held differently; we
know, too, that these are not the only arrests that have been made by vir-
tue of the power claimed by the President under the Constitution, in vari-
ous States of the Union, and no doubt, too, from the contests to which his
action herein has given rise, that it must have received the approbation of
his legal advisers, so construing his powers. Since the argument of these
rules we have seen a judicial opinion fully justifying the right of arrests,

[Kulp *v.* Ricketts.    Chase *v.* Ricketts.    Davenport *v.* Ricketts.]

under the circumstances of the rebellion and war now afflicting our country.

Whatever may be our individual opinion upon either of the questions we have stated, can we repudiate them entirely and say that they cannot hereafter arise for consideration and judicial opinion upon the formal trial of these cases? Can we say now, that if, upon these points, we should try the cases and rule adversely to the power of the Executive, and our opinion be affirmed in the Supreme Court of the State, that a writ of error would not lie thereto, from the Supreme Court of the United States? If such a writ of error would, under such circumstances, lie, then Congress may direct a removal of the cause before trial, as we have already shown. The rule as to the right to such a writ of error is thus stated in *Harris* v. *Dennis*, 3 Peters 301—" It is sufficient if, from the facts stated, such a question must have arisen, and the judgment of the State court would not have been what it is, if there had not been a misconstruction of some act of Congress, &c. &c., or a decision against the validity of the right, title, privilege or exemption set up under it." We merely add, that the construction of constitutional power, under similar circumstances, would equally give jurisdiction. A case " is said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either." *Cohens* v. *Virginia*, 6 Wheat. 378. "And if the appellate power by the Constitution does not include cases pending in State courts, the right of removal, which is but a mode of exercising that power, cannot be applied to them. Precisely the same objections, therefore, exist as to the right of removal before judgment as after; and both must stand or fall together." *Martin* v. *Hunter*, 1 Wheat. 304.

In relation to pending suits the jurisdiction may attach under the authority of Congress, if such questions must arise, and may be decided adverse to the claim under the United States Constitution or laws. We refer also to *Satterlee* v. *Matthewson*, 3 Peters 409, 10.

Again, it has been pressed upon us with great force by the counsel for the plaintiff, that the provision of the 4th section of this act of 1863 is unconstitutional. It is provided by this section, that the authority under the President, which the present defendant claims, did control and authorize his action in the arrest of the plaintiffs, shall be a full and sufficient defence in all actions pending or to be commenced, for any arrest or imprisonment under the color of such order; such defence to be made either by special plea or under the general issue. It is not disputed but that this purports to be a law of Congress, and the defendant claims that he will bring this forward as a defence in the several cases, whenever they come on for trial. It is unnecessary for this court at this time to give any opinion as to the constitutionality of this section; the effect of it as a general defence is not now before us on this motion. When it arises, however, on the trial of the causes, then will not the constitutionality and validity of an act of Congress and law of the United States, be directly drawn into question? Whether Congress can pass legally such an act confirming the previous action of the President, if such action was illegal—whether it can be made available to justify by a retrospective act, which is claimed to have been an illegal arrest and imprisonment, which had previously been committed, even if done under the order of the President—whether such an act is constitutional or not—all these are questions which must arise on these trials. Does not the very argument which has been made here against the validity of the act show that the question naturally belongs to the causes? If so, are not the cases, as the laws of Congress now purport to be, " Cases arising under the Constitution (or) the laws of the United States?". If Congress then passes an act, one section of which is directly applicable to a particular class of cases, inasmuch as the validity of the law, when disputed as now, must come in question, they may, under the Constitution, provide

[Kulp *v.* Ricketts.    Chase *v.* Ricketts.    Davenport *v.* Ricketts.]

for the removal of the case, in which the law will be questioned, into the court of the United States, the proper tribunal for the final disposition of such legal questions.

We have already said that it has been decided by Mr. Justice Strong, in the case of *Hodgson* v. *Millward*, that even when by one tribunal of the United States, and by the decision of our own court of nisi prius, with a refusal of a new trial, the whole defence, which a defendant had previous to the act of March, 1863, had been adjudged invalid under the Constitution and laws of the United States, the case must still be removed if desired, under that act of 1863. How much stronger are the present cases, wherein, being untried, the original defence of the defendant, as claimed under the Constitution and laws of the United States, is still open to inquiry, and he claims also in addition, the new defence under the 4th section of the act of 1863; the force and effect of which the Constitution says shall be ascertained by the United States judiciary, if either party so desires. An act of Congress may be unconstitutional in some of its provisions, and yet constitutional in others; if there be alleged doubts with regard to the said 4th section, still the clause providing for the removal of the actions to which the defence there stated belongs, cannot be disputed. The simple statement that the legal point in dispute is the validity of an act of Congress under the Constitution, and it follows that the right to name the *forum* for trial belongs also to Congress. As is said by Judge Strong, "If, then, the judicial power of the Federal government, as conferred by the Constitution, extends to the adjudication of such cases, the right of Congress to provide for the removal of them cannot be doubted. It is a right which was exercised in the judiciary act of 1789, and it has been acted on ever since, without being called in question."

If these cases, then, are of such a character, which, from the cause of action, fall under the appellate jurisdiction of the United States judiciary act, if this appellate jurisdiction may be exercised, either by writ of error, or by removal before trial, "under such regulations as Congress may direct," when the Congress does direct a removal can this court refuse to obey the direction? The jurisdiction of the State court is in such cause subordinate to the jurisdiction of the United States; and we cannot say that it is clearly unconstitutional for Congress to order such a removal by a law passed even after the jurisdiction of the State court had actually attached to the particular cases. It must be borne in mind, that the conduct and acts of Mr. Ricketts, for which the present suits are brought, construed and recognized by the act of '63, if the allegation and claim of the defendant be correct, as having been done under the authority of the Constitution and laws of the United States, and therefore within the jurisdiction of their courts, were claimed to be justified under this authority before this late act of Congress was passed. Upon this account Congress authorized the removal of the cases, under the constitutional appellate jurisdiction, which before the act could only have been exercised by writ of error after judgment: the act does not newly create the jurisdiction in the United States court, but only provides in what particular court, and how it shall be enforced. The character of the defence authorized by the 4th section rests upon facts and circumstances existing previous to the commencement of the suits, the effect of which the courts must decide : whether or not the construction adopted now by Congress will be available as a defence, must depend upon the constitutionality of the law. We may add, that we are not prepared to say that Congress may not place the trial of these causes where it is claimed that constitutionally it belongs : at any rate, it is not so clear a case of unconstitutional action by Congress, that we must so decide it. The effect of the act, we repeat, as we have said before, must be disposed of by the proper court, upon the trial of the suits.

For the reasons stated, the rule must be made absolute in the case of Mr.

[The State of Ohio *v.* Bliss.]

Kulp. Nor can we discover why the same order shall not be made in the other cases. It is true no declarations have been filed; and the causes of action are not as plainly manifest as in the other case. We did grant rules upon the plaintiffs to declare, after the application for the removal had been made, but we now think this was irregular, and cannot be enforced, as our entire action over the cases should then have been stayed. The cause of action, however, in each case, is set forth in the affidavit of the plaintiffs filed at the time of issuing the writs, and under which the defendant was held to bail. This cause in one case, is "for a false, unjust, illegal and malicious arrest and imprisonment," and in the other "for an unjust and illegal arrest and imprisonment," and these several arrests, &c., the defendant Ricketts, in his petition, verified by affidavit, states, were made under circumstances which would justify a removal under the act of Congress of 1863. This act does not require the previous filing of a narr., but authorizes the application for a removal at the time of entering an appearance, which would be by the entry of bail, and may be before the filing of a declaration. As it appears now to us, from the record and other matters shown on the argument, that the suits of Messrs. Chase and Davenport are of the same character as the other case of Mr. Kulp, we make the rules absolute in each case.

The following order, then, is made in each case :—

"Now, to wit, this 8th day of June, 1863, it is ordered, that upon the defendant giving bond with two good and sufficient sureties, to be approved by one of the judges of this court, in the sum of $1,000, conditioned that he shall file in the Circuit Court of the United States for the Western District of Pennsylvania, on or before its next session, certified copies of the process and other proceedings against him in this court, and also for his duly appearing to the said cause, and entering special bail in the said Circuit Court, according to the act of Congress of March 3d, 1863, this cause to be removed to said court, and that all further proceedings in this court be stayed." By the court.