Wildrick v. Swain.

---

ADMINISTRATOR OF SUSAN WILDRICK, deceased,

v.

GEORGE B. SWAIN.

1. The acceptance of the promissory note of a debtor, for a precedent debt, will not operate as a discharge or satisfaction of the debt, unless it is agreed that such shall be its effect.

2. Where a debtor has attempted to discharge a mortgage with his own unsecured paper promise, given to a person of great age and limited education, he should be required to exercise the most scrupulous good faith, and unless he can show that his creditor fully comprehended the legal effect of the acquittance he induced him to give, it should be adjudged to be without legal force.

3. A receipt is never conclusive evidence of payment, but is always open to explanation or contradiction by oral evidence.

---

On final hearing on bill, answer and proofs taken before a master.

*Mr. L. D. Taylor,* for complainant.

*Mr. Carl Lentz* and *Mr. John W. Taylor,* for defendant.

VAN FLEET, V. C.

This case presents but a single question. The suit is brought to foreclose a mortgage. The defendant admits a debt of $350, but the complainant claims a much larger sum. The dispute is confined to the question as to what sum the complainant is entitled to recover.

The mortgage in suit was executed April 10th, 1850, by Abram Wildrick and Isaac Wildrick to Susan Wildrick. The mortgagors were the step-sons of the mortgagee. The mortgage was given to secure the payment of a bond, made by Abram and Isaac to Susan, in the sum of $2,000, with condition that the obligors should pay the obligee $120 each and every year during her life. The bond was intended to provide an equivalent for the mortgagee's interest as dowress in the lands mortgaged. Susan died August 3d, 1875, at the extraordinary age of one hundred and one years. All the annual payments accruing prior to April 1st, 1873, are receipted on the bond. The receipts dated prior to April 1st, 1869, are all signed by Susan by a mark. She could not write. That dated April 1st, 1869, and those of subsequent dates, are unsigned. They were all written by Isaac Wildrick, one of the obligors. With one or two exceptions they admit payment in full to date. That of 1861 may be taken as a fair specimen of the whole. It is in these words : " Recd. April 2, 1861, one hundred and twenty dollars in full to date." It is admitted that the sums stated in the receipts were not wholly paid in cash. What transpired when the receipts were given is thus described by Isaac Wildrick, who, as already stated, drew all the receipts :

" She [Susan] always told me how much money sne wanted, and I paid her what she told me, and paid the rest in notes ; she was satisfied with the settlements by notes and money ; she always said she was satisfied with the settlements."

And as to the circumstances under which the notes were ac-cepted, he testified as follows :

" *Q.* Did Mrs. Wildrick ever say to you, when you went to settle the inter-est and you gave her the notes you have testified to, that she never expected or intended that you should pay her the interest you owed her when you gave her these notes ?  *A.* She never said to me that she took the notes as pay ; how could I tell what she expected ?  *Q.* Did she ever say, ' I'll take the notes as pay ?'  *A.* Yes, sir ; she took the notes as pay, and we settled so every year ; that is what she said.  *Q.* Did she say, every year, she took the notes as pay ?  *A.* I would not say every year, but she would bring the bond out, and we would settle every year, part in cash and part in notes ; that is the way we settled.  *Q.* Did she ever say the notes were to be a final settlement, if they were never paid ?  *A.* No such question was ever asked her."

The first receipt was given in 1854, when Mrs. Wildrick was about eighty years of age, and the last in 1872, when she was nearly ninety-eight.  The course of dealing, as described by Isaac Wildrick, shows that his step-mother reposed the utmost confidence in him ; she allowed him to draw the receipts, to select the language in which they should be couched, and to transact the whole business in his own way.  There was no deal-ing at arm's length, but Mrs. Wildrick did whatever her step-son requested, believing he would not allow her to do anything which might imperil her rights.  The relation and character of the parties were such as were likely to inspire a blind confidence on her part.  She was the widow of his father, and had a right to rely upon his protection.  She was ignorant of the methods of doing such business, and very illiterate.  He was a man of affairs, having considerable prominence both as a business man and a politician.  He and his brother were the owners of a large amount of property, and were engaged in enterprises of con-siderable extent.  ·He had been the recipient of repeated ex-pressions of public confidence, having been advanced, by regular gradations, from the office of constable to that of representative in the congress of the United States.

The proposition is quite elementary that the acceptance of the promissory note of a debtor, for a precedent debt, will not ope-rate as a discharge or satisfaction of the debt, unless it is agreed

that such shall be its effect. In *Schanck* v. *Arrowsmith, 1 Stock. 323,* Chancellor Williamson declared· that the principle was firmly established that the taking of an additional or other security, of inferior or equal degree, would not *ipso facto* discharge a lien which attached by reason of an original security. He further said :

"If the original security is actually canceled, or the lien created by it formally released, of course no resort can be had to it. It is always a question of intention, sometimes to be ascertained by the legal construction of written instruments, and sometimes by the circumstances of the case."

The New York adjudications go one step further in protecting the right of the creditor to his original cause of action. It is there held that the acceptance by a creditor of a new promise from his debtor to pay a pre-existing debt, affords no defence whatever to a suit on the original cause of action, even if the creditor expressly agrees that the new promise shall operate as a satisfaction of the old. And the reason assigned for refusing to give legal efficacy to the promise of the creditor is that it has no consideration to support it, being a mere *nudum .pactum. Frisbie* v. *Larned, 21 Wend. 452; Cole* v. *Sackett, 1 Hill 516; Waydell* v. *Luer, 5 Hill 449; S. C. on error, 3 Denio 410; Rice* v. *Dewey, 54 Barb. 455.* A rule, the exact opposite of that just stated, prevails in Massachusetts, and also in Maine. There, the law presumes, when a debtor gives his creditor a negotiable promissory note for an antecedent debt, that the creditor accepts it in satisfaction of the original cause of action. *2 Pars. on Notes 150,* note (*a*). The rule in force in this state is the one first stated, viz., that a new promise does not discharge the original cause of action, unless it is shown that the parties agreed that such should be its effect. *Freeholders of Middlesex* v. *Thomas, 5 C. E. Gr. 41; Hutchinson* v. *Swartsweller, 4 Stew. Eq. 205.* An agreement of that character may be established, either by proof of an express contract, or by proof of circumstances which will justify its implication.

The vital question, then, of this case is, has it been proved that Mrs. Wildrick accepted the notes which were given for

Wildrick *v.* Swain.

moneys accrued on her bond, with an agreement on her part that her acceptance of them should discharge the lien of her mortgage? The burden of this issue is on the defendant. He asks the court to believe that this old woman, for a period of over twenty years, fully understanding what she was doing, annually consented to accept mere paper promises in satisfaction of her mortgage, though none of them were ever fulfilled, and though, when she accepted the last, the aggregate amount of those previously accepted exceeded the penalty of her bond. It is difficult to believe that any person possessing ordinary selfishness would, for so long a period, pursue a course of such great improvidence; but when it is added that the person who acted thus was a penurious old woman—and that is the character given to her by Isaac Wildrick: he says she was a saving woman, she spent no more than she could help—the story approaches the incredible.

The receipts, under some circumstances, would furnish very cogent evidence that the notes were accepted as satisfaction. But here there is no evidence whatever that the contents of a single one of them were ever made known to Mrs. Wildrick. There is no evidence that they were ever read to her; but that would hardly have been sufficient in a case like the present. In dealing with a person of her great age and limited education, in a matter like that under consideration, where a debtor has attempted to discharge a mortgage with his own unsecured paper promise, he should be required to exercise the most scrupulous good faith, and unless he can show that his creditor fully comprehended the legal effect of the acquittance he induced him to give, it should be adjudged to be without legal force. A receipt is never conclusive evidence of payment, but is always open to explanation or contradiction by oral evidence. *Cole* v. *Taylor, 2 Zab. 59; Crane's admr.* v. *Alling, 3 Gr. 423.* Chancellor Williamson, in the case already cited (*Schanck* v. *Arrowsmith*), declared that, in order to determine what effect should be given to a receipt which attempted to discharge a lien without actual payment, the court ought to scan the relation of the parties, see the character of the debt and the consideration given, and ex-

amine the circumstances attending the whole transaction, and
unless it appeared that the person giving the receipt understood
his rights and was made fully aware how the receipt would affect
them, it ought not to be held that the lien was discharged. And
in Massachusetts, where the mere acceptance of the negotiable
note of a debtor raises a presumption that the creditor takes it
in satisfaction of his pre-existing debt, no less an authority than
Chief-Justice Shaw has said that where this presumption will
deprive a creditor of a lien without actual payment, it ought
not to be made. *Curtis* v. *Hubbard, 9 Metc. 322.*

When all the facts and circumstances of this case are brought
under review, no doubt is left in my mind that Mrs. Wildrick
signed the receipts in question without understanding their legal
effect, and with no intention to extinguish the lien of her mort-
gage. She put her mark to them simply because her step-son
requested her to do so. She trusted him implicitly, and, I have
no doubt, believed that he was incapable of contemplating, much
less of perpetrating, a fraud against her. Nor do I think that
Isaac Wildrick meant that the notes, unless they were paid,
should extinguish the mortgage. He doubtless intended to pay
them when he made them, and probably the possibility of his
being unable to do so never entered his mind. He endorsed full
acquittances on the bond, not because he thought he had dis-
charged the debt, nor because he wanted to be released from it
without making an honest payment of it, but because that was
the method of doing such business with which he was most
familiar. In view of the relations and character of the parties,
it is impossible to believe that either thought that the notes
would extinguish the debt secured by the mortgage unless they
were paid. Can it be doubted that if at any time during their
business intercourse it had been suggested that the proper form
of receipt to be given was to state that a note had been given for
the amount due, which, when paid, should be in full, that it
would have been instantly adopted? I believe the mortgagors
would as readily have adopted such a precaution as the mort-
gagee. I am unwilling to believe that the mortgagors ever
desired to obtain an extinguishment of the mortgage except by

fair means. Its execution formed an important part of the original plan of these parties. It was made for the protection of Mrs. Wildrick. The mortgagors doubtless meant that she should have the full benefit of the protection it afforded. Without clear proof, therefore, of a fraudulent purpose on the part of the mortgagors, it cannot be believed that they intended to induce Mrs. Wildrick, year after year, whenever a new right accrued under her mortgage, to release it without payment or compensation, so that, as to the past, she should be placed in exactly the same unprotected condition that she would have been if at the outset she had taken simply their unsecured promise. And yet this is what the defence insists the mortgagors did.

My conclusion is, that the notes were not accepted as satisfaction, and consequently that the lien of the mortgage is still in full force.

At the time the mortgage in suit was executed, Abram and Isaac Wildrick owned the mortgaged premises, together with other lands, as tenants in common. Abram died intestate in 1871, and subsequently a voluntary partition was made. The mortgaged premises fell to the share of the children of Abram. They, of course, took them subject to the lien created by their ancestor. The mortgaged premises were subsequently conveyed to Charles B. Thurston, and by him to the defendant. Both deeds contain this statement: "This conveyance is made subject to certain encumbrances, now liens, on said premises." If either grantee had taken title after an inspection of the receipts endorsed on Mrs. Wildrick's bond, and without notice that they did not represent actual payments, the present defendant would undoubtedly be entitled to hold the mortgaged premises free from the lien of the payments so receipted. *Moore's admr.* v. *Vail, 2 Beas. 295.* But nothing of that kind appears. Neither asked to see the bond, nor, so far as appears, made the least effort to ascertain from the person authorized to speak, what remained due. Under such circumstances, the purchaser of the equity of redemption has simply the equity of the mortgagors, and nothing more. *2 Jones on Mort.* § *918.*

The complainant is entitled to a decree, but, with the material at hand, it is impossible to fix the amount. The proof, as it now stands, will perhaps warrant the conclusion that Mrs. Wildrick, at the time of her death, held five notes, amounting in the aggregate to over $2,400—partly representing the debt secured by the mortgage, and partly representing other indebtedness. The notes are not before the court, nor has any evidence been submitted which will enable the court to determine what part of each of the annual payments was paid in cash, and how much remains unpaid. This matter must be referred to a master, with directions to take proofs and report.