JOHN MORGAN *v.* J. H. WALBRIDGE AND ELMER CHASE.

[IN CHANCERY.]

*Mortgagee in Possession. When Improvements chargeable to Mortgagor on Redemption.*

1. While it is a general rule that a mortgagee in possession without foreclosure cannot improve the mortgagor out of his estate, and that permanent improvements cannot be made at his expense, if he elects to redeem, yet it is not an inflexible rule; but it is suspended in exceptional cases, if justice requires it; thus, the land in question was covered with sprouts and bushes, the large timber having been taken off, and, in no condition to yield income; the mortgagee was in possession, and, supposing that he was the absolute owner, cleared the land, built fences, and erected a small barn—all such as good husbandry required, and done in good faith; the mortgagor stood by in silence, making no objections, asserting no right or wish to redeem until the improvements were substantially completed. A bill having been brought to redeem, *Held,* that the rule that he who seeks equity must do equity applies; and that the improvements were chargeable to the mortgagor.

2. A grantor has an equity of redemption under a deed absolute in form, but in reality a mortgage.

BILL in chancery to redeem certain mortgaged premises in the possession of the mortgagee. Heard on bill, answer and the report of a special master, March Term, 1883, Essex County. Ross, Chancellor, decreed that the orator could redeem by paying

$329.81. The chancellor stated that in his judgment this case was exception to the general rule that a mortgagee in possession could not improve the mortgagor out of his estate.

The master found, that the balance due from the orator on the bank notes, money paid to Ingalls, etc., was $229.81 ; that the use of the premises while occupied by the defendant was $200 ; and that the value of the land was enhanced $300, by reason of the improvements. It was a part of the decree below that the defendant, on payment of the $329.81 by the orator, should deed back and surrender the bank notes which had not been fully paid. The other facts are stated in the opinion.

*Bates & May*, for the orator.

The court will treat the deed as a mortgage. *Wright* v. *Bates,* 13 Vt. 341 ; *Hills* v. *Loomis*, 42 Vt. 562. The note which H. & W. signed as sureties is not at present paid. *Reed* v. *Gannon*, 5 N. Y. 348; *Strike* v. *McDonald*, 3 Harr. & G. 191. The improvements are not of such a character as to warrant an allowance of the same. The master makes no finding as to whether any of the improvements were reasonably necessary and proper; if not so found the court cannot infer that they were so. *Saunders* v. *Frost*, 5 Pick. 259 ; 2 Jones Mort. 1129. The charge for clearing the land is not allowable ; *Moore* v. *Cable,* 1 John. Ch. 385; *Morrison* v. *McLeod*, 2 Ired. Eq. 108 ; 2 Kent Com. 334; *Saunders* v. *Wilson*, 34 Vt. 318 ; nor the charge for building the barn : *Russell* v. *Blake*, 2 Pick. 505 ; *Reed* v. *Reed*, 10 Pick. 398 ; *Beckman* v. *Wilson*, 10 Reporter, 554.

*Nichols & Dunnett*, for the defendants.

Defendant concedes the general rule that a mortgagee cannot improve the mortgagor out of his estate ; but this case is a plain and well recognized exception to the rule. A mortgagee in possession making improvements upon the mortgaged premises in the belief that his title is perfect is entitled to remuneration for expense so incurred to an amount equal to the enhanced

Morgan *v.* Walbridge and Chase.

value of the premises. *Howard* v. *Harris,* 2 Lead. Cas. Eq. p. 2011; *Whitney* v. *Richardson,* 31 Vt. 300; 2 Jones Mort. 1128; *Green* v. *Biddle,* 8 Wheat. 77; 4 Wait Act. & Def. 578; 2 Story Eq. s. 1237, n 1; 2 Wash. R. P. p. 229; *French* v. *Burns,* 35 Com. 359.

The opinion of the court was delivered by

POWERS, J. This is a bill to redeem certain mortgaged premises now in the possession of the defendant Walbridge as mortgagee, and encumbered by a mortgage executed by Walbridge to defendant Chase.

The right of redemption as against Walbridge is conceded; and the master reports that Chase took his mortgage with notice of the orator's equity, and thus the right of redemption exists in favor of the orator against him. The question in hand is, what shall the orator pay as the price of redemption ?

Hill & Walbridge were sureties for the orator on sundry notes to various banks, and to indemnify his sureties, the orator, August 29, 1876, executed to them a quit claim deed of the premises in question. This deed, though absolute in form, was in fact a mortgage, and an equity of redemption under it, remained in the orator, to all intents and purposes, as complete and perfect, as though it had been in form a mortgage.

Hill & Walbridge failed, and, among other conveyances in the adjustment of their affairs, in the fall of 1876, conveyed the premises in question to Ingalls, in trust for their creditors;— Ingalls, however, taking such conveyance with notice of the orator's equity. In the spring of 1878, the orator was notified that Ingalls was about to sell said premises, and that the orator could have them for $100. The orator declining to purchase, Walbridge, his co-surety Hill having died, procured one Tilton to take a conveyance and pay $100, Walbridge furnishing the money. This conveyance was on April 23, 1878. This money was paid out for the orator's benefit on his notes upon which Walbridge was surety, and for taxes.

Dec. 9, 1878, Tilton quit-claimed the premises to Walbridge,

and on the same day Walbridge mortgaged the same to defendant Chase. At the time of the conveyance to Hill & Walbridge by the orator, and until Walbridge made the improvements hereinafter described, the land was of comparatively little value without a considerable expenditure of labor and money. The wood and large timber had been taken off, and it had run up to sprouts and bushes, so as to make it a difficult and expensive piece of land to clear.

From the master's report it is apparent that the land was in no condition to yield any income, and could only be made valuable, by being burned over, grubbed and fitted for cultivation.

Walbridge, after the orator declined to take a conveyance from Ingalls and pay $100, (which the master finds was the value of the premises at the time) supposed, when Ingalls sold to Tilton, and Tilton to him, that he had secured a good title to the land, and the orator's equity of redemption was extinguished. Thereupon, in the belief that he had a good title, he went on and made permanent and valuable improvements upon the land, in the years 1879, 1880, 1881, and 1882. He cleared up the land, smoothed the surface, built fences, and erected a small barn. All his improvements were in kind and character, such as good husbandry required, such as alone made it valuable, and such as a prudent owner would have made. The orator knew of the improvements as they were from time to time going on, and made no objection thereto, and asserted no right or wish to redeem until the summer of 1881, when, through O. F. Harvey, he communicated to Walbridge his desire to redeem. In March, 1882, the orator offered to pay Walbridge $125, and called on him for a deed. At this time, and when Harvey interviewed Walbridge in 1881, the improvements had been substantially all made, costing Walbridge about $375, and enhancing the value of the premises as the master reports, $300.

Are these improvements chargeable to the orator on redemption?

The general rule is conceded, that a mortgagee in possession without foreclosure cannot improve the mortgagor out of his

estate. The mortgagee is not in possession as owner, but as a quasi trustee, to keep the premises in proper repair, carry them on according to the rules of good husbandry, and apply the rents and profits to the extinguishment of his mortgage debt. As a general proposition, lasting improvements cannot be made at the expense of the mortgagor, if he elects to redeem. But it is a rule of general application in courts of equity that he who *seeks* equity, must *do* equity. It is obvious that the orator had no interest to redeem the premises before the improvements were made; and, upon foreclosure brought, he would, doubtless, have declined to redeem. He had declined to take the title at the actual value of the land. It was only after the improvements had made the land of productive value that he discovered a wish to redeem. He was not improved *out* of an estate, but was improved *into* one. He stood by in silence, and saw the improvements going on, and now, when the land has been made of practical value, seeks to reap the benefit of such improvements by paying its original value with interest. This proposition is too unrighteous to meet the approval of a court of equity. The case is not that of a farm already in a condition to be carried on, like *Sanders* v. *Wilson*, 34 Vt. 318 ; nor that of wild land, like *Moore v. Cable*, 1 Johns. Ch. 385 ; but it is the case of land partially subdued, requiring further expenditure to bring it to productive value. The rule forbidding an allowance for permanent improvements, is not an inflexible one, but is suspended in exceptional cases, if justice and the equity of the case require it. 4 *Kent Com.* 167 and note. Such allowance has been made where the mortgagee has acted in good faith and under the mistaken notion that the right of redemption has been barred: *Benedict* v. *Gilman*, 4 Paige, 58 ; and where the mortgagor has been slow to act and has thus led to a false impression by his silence: *Mickles* v. *Dillage*, 17 N. Y. 80 ; and where the mortgagee makes the the improvements supposing he is the absolute owner: Hill. Mort. 297 ; and where the mortgagee has been long in possession and suffered to treat the estate as his own, and the mortgagor stands by, and in silence permits the

improvements to be made: *Neal* v. *Hagthorp*, 3 Bland Ch. 590.

When the mortgagee has been lulled into the belief that the right of redemption has been barred or abandoned, and the mortgagor, knowing, or having reason to believe, that the mortgagee supposes that he is the absolute owner stands by and sees the mortgagee make lasting improvements upon the land, in kind and character, such as the land in its condition and wants clearly requires, and which are obviously sanctioned by the usages of good husbandry and faithful stewardship, then the right to redeem will be burdened with the expense of such improvements.

This rule is well fortified by authority, and is securely grounded in reason and justice; and this case is one proper for its application.    Decree affirmed.