SAMUEL B. BEACH *vs.* FRANK H. OSBORNE ET AL.

SAMUEL B. BEACH *vs.* WILLIAM J. MCMULLEN ET AL.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A mortgage which is so drawn that the record of it will give notice with reasonable certainty of the nature and amount of the incumbrance upon the property, is valid against subsequent *bona fide* purchasers and incumbrancers.

A mortgage and the accompanying note stated the debt as $3,500. In fact the mortgagee, when the mortgage was executed, gave the mortgagor $2,500 in money and checks, and, in place of cash, a due bill for $1,000, which was treated as money and was cashed within a few weeks. *Held* that the affair was properly considered by the parties as a cash transaction, and that the description of the debt fully satisfied, in letter and spirit, the legal requirements.

Every person who takes a conveyance of an interest in real estate is conclusively presumed to know those facts which are apparent upon the land records concerning the chain of title of the property described in the conveyance ; and this imputed knowledge is for all legal purposes the same in effect as actual knowledge.

Accordingly one who buys real estate and puts improvements thereon, relying upon his grantor's statement as to the title and making no examination of the land records, cannot be treated as having acted in good faith and without knowledge of a prior mortgage which was duly recorded, so as to enable him to recover compensation for

such improvements against the prior mortgagee, either under the general rule in equity or under § 1055 of the General Statutes.

The fact that a subsequent mortgagee employed an attorney to search the records, who certified that the title was free from incumbrances, does not relieve him of the knowledge of a prior mortgage imputed to him from the record thereof.

Argued November 13th, 1901—decided January 9th, 1902.

ACTIONS to foreclose mortgages of real estate, brought to the Superior Court in Fairfield County and tried to the court, *Robinson, J.;* facts found and judgment rendered for the plaintiff in each case, and appeal by certain of the defendants for alleged errors in the rulings of the court. *No error.*

The defendants Charles B. and Edward H. Marsh, real estate dealers and builders under the name of Marsh Brothers, on December 30th, 1899, applied to the plaintiff for a loan of $3,500, to be secured by mortgage upon two adjoining building lots. The applicants showed Beach two lots, one having a dwelling-house thereon, as the lots to be mortgaged. The plaintiff consented to make the loan. The plaintiff gave to the mortgagors $2,500 in money and checks and, not having more cash in hand on that day, a due bill for $1,000, given in place of cash and to adjust and make up the balance of the loan. This due bill was cashed within sixty days. Marsh Brothers, upon receipt of the $2,500 and the due bill, made their note to the plaintiff for $3,500, and to secure the same executed to him a mortgage for said sum upon two lots of land, the description of which proved them not to be those shown to the plaintiff, but other vacant lots, and thereupon the plaintiff recorded said mortgage. The first of these lots was described as free of incumbrance, and the second as subject to a mortgage of $1,000. The plaintiff was ignorant of the fact that the loan was not secured by the property shown, until within a few days of the bringing of this action. In August, 1900, the defendant Osborne made an oral contract with Marsh Brothers for the purchase of the lot first described in the plaintiff's said mortgage, and then vacant. This contract called for the erection of a house upon the lot by Marsh Brothers. The agreed price for the lot with the house

thereon was $5,400.    Osborne having made a payment on account, Marsh Brothers conveyed said lot to him by warrantee deed which described and warranted it as free and clear of all incumbrances.    Osborne at once mortgaged the premises to Burr & Knapp for $4,000, the proceeds of the mortgage being assigned by him to Marsh Brothers in part payment of the purchase price, to whom the money was paid from time to time as the construction of the house thereon progressed.    This mortgage Burr & Knapp sold and assigned to the defendants Helen F. and Adah C. Knapp, who paid full value therefor.    Osborne, Burr & Knapp, and said Helen F. and Adah C. Knapp, were all ignorant of the existence of the plaintiff's mortgage, and believed that the mortgage to Burr & Knapp was the first incumbrance on the property. Osborne never, by himself or agent, examined the land records, but relied entirely upon the statement of one of the Marshes that the land conveyed was free from incumbrance, and that their attorney, one Percy L. Johnson, had searched the title and found it so.    Burr & Knapp, before making their loan, received the certificate of said Johnson, an attorney then in good repute, that the title to said premises was clear, and this certificate they passed to their assignees. Neither said Burr & Knapp, nor said Helen and Adah Knapp, made any further inquiry, but acted upon the strength of said certificate.    Said house has never been fully finished, but said Osborne moved into it in December, 1900, and now occupies it.    Neither Burr & Knapp, nor said Helen or Adah Knapp, knew of the existence of the plaintiff's mortgage until the failure of Marsh Brothers in the latter part of December, 1900.    Osborne first learned of it when these proceedings were begun.    The second piece described in the mortgage to the plaintiff has no equity in it over and above the $1,000 mortgage thereon.    The defendant Osborne made default of appearance.    Said Helen and Adah Knapp alone appeared to defend and took the appeal.

   *John C. Chamberlain* and *Robert E. DeForest*, for the appellants (defendants).

*Curtis Thompson*, with whom was *William H. Kelsey*, for the appellee (plaintiff).

PRENTICE, J. The defendants contend that the plaintiff's mortgage is void for the insufficiency of the description therein of the mortgage debt. The mortgage is expressed to be given to secure the payment of a note for $3,500. What was the actual transaction in precise detail? The mortgagors had applied to the plaintiff for a loan of $3,500, which he consented to make upon the receipt of certain mortgage security. When the transaction was consummated the plaintiff gave to the mortgagors $2,500 in cash and checks and, in want of more cash on hand, a due bill for $1,000, which the court finds was given and received "in place of cash to adjust and make up the balance of said loan." The $3,500 mortgage note and the mortgage to secure it were then given.

The law requires "that a mortgage, to be valid against subsequent *bona fide* purchasers and incumbrancers, must be so drawn that the record of it will give notice, with reasonable certainty, of the nature and amount of the incumbrance upon the property;" *Bouton* v. *Doty*, 69 Conn. 531, 543; or, as another case puts it, that the debt "must be described with sufficient certainty, to enable subsequent creditors or purchasers to ascertain, either by the condition of the deed or by enquiry *aliunde*, the extent of the incumbrance." *Hubbard* v. *Savage*, 8 Conn. 215, 219.

The description of the debt in this case fully satisfies these requirements, both in their letter and their spirit. The note described existed. It was given in a straightforward business way for an equivalent amount in money actually advanced, or absolute obligation to pay money incurred. The due bill was such an obligation. It was given in place of money which was not then at the party's command, and in a few days, pursuant to intention, it became money. The whole transaction was regarded by the parties as a cash transaction, and there was no impropriety in law in their so regarding it, and, accordingly, making the mortgage note one for

$3,500 and so describing the mortgage debt in the mortgage itself. The rule of law stated is not a purposeless one. It was not made as a trap for the unwary. Its purpose was to prevent opportunities for fraud and concealment and thereby to protect the interests of third parties. What possible harm could come to anybody from a transaction such as the record outlines, so that we should say to this plaintiff that he ought not to have any protection at the hands of the law? No countenance for such a claim can be found in the application of the rule to the facts of any case within this jurisdiction. If the mortgage debt was sufficiently described in the case of *Mix* v. *Cowles*, 20 Conn. 420, as this court said it was, certainly little remains to be said in objection to the description in this case.

˙ The defendants contended in the court below, and contend here, that the improvements made upon the land should not be held to be subject to the plaintiff's mortgage, but that he should be compelled to pay the defendants the value thereof, or that the defendants be permitted to redeem by paying the value of the land regardless of the improvements thereon.

We have a statute which provides that " final judgment shall not be rendered in any action to recover the possession of land, against any defendant who or whose grantors or ancestors have, in good faith, believing that he or they, as the case may be, had an absolute title to the land in question, made improvements thereon, before the commencement of the action, until the court shall have ascertained the present value thereof and the amount reasonably due to the plaintiff from the defendant for the use and occupation of the premises; and if such value of such improvements exceeds such amount due for use and occupation, execution shall not be issued until the plaintiff has paid said balance to the defendant or into court for his benefit; but if the plaintiff shall elect to have the title confirmed in the defendant, and shall, upon the rendition of the verdict, file notice of such election with the clerk of the court, the court shall ascertain what sum ought in equity to be paid to the plaintiff by the defendant or other parties in interest, and on payment thereof

may confirm the title to said land in the parties paying it." General Statutes, § 1055, as amended by the Public Acts of 1901, Chap. 141.

In the absence of Osborne, the equity owner in possession, as a party before us, counsel for the defendants who are before us have placed little real reliance upon this statute. We are, therefore, not called upon to determine whether or not its provisions apply to proceedings of foreclosure, where possession is incidentally asked to be given to the mortgagee plaintiff. This question, however, becomes one of comparative insignificance in view of the broader claim which the defendants do make and urge, to wit, that the statute recited is only the formal legislative enactment of a recognized equity principle in one of its applications. The plaintiff comes to the Superior Court as a court of equity. To obtain equity he must do equity; and he must do it to all those whom his desired judgment of foreclosure will affect injuriously. So far this, their course of argument, is plainly logical and sound. The doing of equity in the case disclosed by the record, they next say, requires that they be permitted to redeem by the payment to the plaintiff of the value of the land alone, or that he, as a condition of the foreclosure, pay to them the present value of the improvements which they or their grantor put upon the land. The reason for the existence of this equity in them, they say, arises from the fact that they made the improvements, which are conceded to be permanent and beneficial, in good faith, believing that the property was under no prior incumbrance to the plaintiff.

The general principle of allowance for improvements made in good faith and ignorance of defects in title, thus invoked, is one borrowed from the civil law. For a long time it seems to have been recognized only in cases where the person who, or whose grantor, had made the improvements was sued for rents and profits. In *Bright* v. *Boyd*, 1 Story's Rep. 478, a wider application of the principle was announced, which has since been generally accepted, either judicially, or by statute, or both. The plaintiff concedes the existence of the principle, but contends that it has never been held applica-

ble, and should not be held applicable, to actions of foreclosure. Here again we are under no necessity of deciding the point in issue. For the purpose of the argument let us assume that the defendants have correctly defined their equitable rights. What then results? The defendants by their own statement, as they necessarily must, condition their right to the equitable relief desired upon the assumption that their grantor, Osborne, in putting the improvements upon the land, acted in good faith and in the belief that the land was free of incumbrance to the plaintiff.

It is just here that their argument fails. The plaintiff's mortgage was upon record long before Osborne bought. There was no uncertainty or ambiguity about its contents, no doubt as to its legal effect. It was necessary only to see it to appreciate its results to the title to the land in question. To be sure neither Osborne, nor those who held under him, ever saw or actually heard of it until after the improvements were made, and so it is possible to say that he, when he made the improvements, and they, when they took their mortgage interests, were ignorant in fact of its existence. But is this sufficient foundation upon which to predicate good faith and such a belief as the equity rule invoked requires? Is it sufficient when the added fact appears that Osborne never examined the records or had them examined for him, but relied without question upon the statements of his grantor? Would it have been sufficient had he seen the certificate of Johnson, the reputable attorney, or does it help his grantees that they saw and relied upon such certificate? We think not.

This brings us naturally to an inquiry as to the nature of our recording system and the effect which the law gives to the due record of conveyances of land. Fortunately we are not upon an untrodden field. This court has repeatedly and from early days spoken in no uncertain language, as witness the following: —

" It has ever been the policy of our laws, to make every man's title to his real estate, as far as practicable, appear of record." *Bush* v. *Golden,* 17 Conn. 594, 601; *Whiting* v. *Gaylord,* 66 Conn. 337. " When a deed is lodged . . . .

with the town clerk, it is constructive notice to all the world." *Booth* v. *Barnum*, 9 Conn. 286, 289. " Under our recording system a deed duly recorded is constructive notice to all the world; and the law conclusively presumes that every person interested has knowledge, not only of the deed, but of its precise language." *Hamilton* v. *Nutt*, 34 Conn. 501, 510. " Whatever in fact appeared upon the records, they were, so far as his legal title is concerned, conclusively presumed to know." *Ensign* v. *Batterson*, 68 Conn. 298, 305. " It is so far notice, because the mortgage is required to be recorded in the town where the land lies ; and being so recorded, the law declares, that a subsequent incumbrancer shall be considered as having actual notice of the first mortgage." *Osborn* v. *Carr*, 12 Conn. 195, 204. " The law implies notice on the ground that it is conclusively presumed that a person will not purchase an interest in a piece of land without examining the condition of the record. Such an act would be required by common prudence." *Hunt* v. *Mansfield*, 31 Conn. 488, 490. " Whether a purchaser has, or has not, actual notice of the contents of a prior deed properly executed and duly recorded, the effect is the same. The policy of our law makes the record sufficient notice." *Sumner* v. *Rhodes*, 14 Conn. 135, 139.

The irresistible conclusions from these repeated enunciations of the long-established law of this State are, (1) that every person who takes a conveyance of an interest in real estate is conclusively presumed to know those facts which are apparent upon the land records concerning the chain of title of the property described in the conveyance, and (2) that this presumption of knowledge is for all legal purposes the same in effect as actual knowledge. The next step of inexorable logic is that in determining the good faith and belief of a person as respects the title to property which he assumes to own, for the purpose of adjusting conflicting equities, his good faith and belief must be one which is consistent with actual knowledge of the facts affecting his title which are apparent upon the land records. He cannot plead ignorance of what the law says he is conclusively presumed to know.

This presumed knowledge is present at every step he takes, at every act he does—in law as potently present as if he actually knew.   Knowledge is never ignorance.   One cannot have knowledge and, notwithstanding, have his conduct, which ought to be controlled by that knowledge, judged as to its good faith, or his belief determined, as though he were ignorant.   His knowledge, whether it be actual or such as the law conclusively imputes to him, enters into every situation, into every act, into every belief.   If, in spite of what he thus in law knows, his action is *bona fide* and his belief a consistent one, then and not until then does he fill out the measure of a good faith and an honest belief.

Let us apply these truisms to the facts of this case.   When Osborne purchased, took title and built his house, the plaintiff's mortgage was on record.   In the eye of the law he knew that fact.   It matters not that he had no actual knowledge. He had what was the same in law.   He knew and therefore put his improvements on with knowledge.   When Burr & Knapp made their loan and took the mortgage which the defendants now own, they likewise knew, and so did the defendants when they took their assignment.   Knowledge runs through the whole course of the events which place the defendants in their present unfortunate predicament.   Where, then, is their equity as against the plaintiff?   How is it that they can claim the protection of the equitable right which they invoke to set aside the plaintiff's legal rights of priority? Clearly they cannot.

It is apparent that these considerations would be as pertinent were the case one in which the defendants were relying upon the express provisions of the statute cited.   It is also apparent that the principle, in so far at least as we are called upon to lay it down, is not one which by any means destroys the efficacy of either the statute or the equitable rule behind it.   There yet remain, unaffected by the principle, many situations in which an appeal could be made to either the statute or rule, without running counter to the limitation respecting good faith and belief which is here imposed.   The failure of title which comes as a surprise to one who in pos-

session has made permanent improvements upon real estate, or to those claiming under him, may arise from some matter of fact not of record ; as, for instance, from marriage, kinship, or the disability of grantors ; from the intervention of prescriptive rights or rights by dedication ; through complications which have arisen in the settlement or distribution of estates of deceased persons ; from lost or disputed boundaries ; from some conveyance *prima facie* good having been judicially declared void after improvements were made ; or from some defect in the proceedings attending a judicial sale in the chain of title.

This catalogue of circumstances, which does not profess to be by any means exhaustive, is given merely as suggestive of the extent of the field which lies outside of the scope of our present decision, and to emphasize the fact that we do not at present go beyond saying that belief in title and good faith in conduct, as related to the subject under discussion, to be effective, must be such as is consistent with knowledge of those facts which are apparent upon the records.

In this case, as we have already observed, the defect in Osborne's supposed title was of the most palpable sort. His title might of course have failed, as others have, for more obscure reasons which, while not apparent to the ordinary observer of the records, could not be fairly said to arise from matters *aliunde* the records. It is easy to imagine cases, and such appear in the books, in which the failure of title grew out of some uncertainty, ambiguity, or obscurity in the language of a conveyance or will on record, with respect either to the premises or the interest or estate conveyed. It is evident that situations of this character call for somewhat different considerations than those in the case at bar. As the question they present is not involved in the one before us, it is superfluous to decide it. We content ourselves with laying down a rule which by its terms applies only to defects of title which an examination at the appointed sources of information would disclose as being apparent and palpable.

There is another aspect of the question which, without being altogether different perhaps in its ultimate analysis, serves

at least to emphasize the inherent weakness of the defendants' contention. It is the policy of our law to make every man's land title as far as practicable appear of record. The purpose of this policy is to furnish to all full and complete information for their guidance and protection. The place is appointed, the means provided, and the duty prescribed. Inquiry at the appointed sources of information becomes inevitably a part of the rule of duty of every ordinarily prudent person who intends to deal in realty. Grantees of realty, like persons in all other situations in life, are bound to exercise reasonable diligence; and that involves, if our registry system is to have any vital efficacy, going to the land records to ascertain what is there published to the world concerning that which they are proposing to purchase. They may not shut their eyes to information which is blazoned for their instruction, and plead innocence if they suffer for their ignorance. Due and reasonable care in a grantee involves something more than passivity and a sublime confidence in all things human. Such an one who fails to examine to see what the records disclose concerning the title to the land he proposes to take, is, in the eye of the law, negligent; and equity does not as a general rule relieve from the consequences of one's own negligence. *Dawson* v. *Grow*, 29 W. Va. 333; *Effinger* v. *Hall*, 81 Va. 94; *Nunn* v. *Burger*, 76 Ga. 705; *Cordova* v. *Hood*, 17 Wall. 1; *Foley* v. *Kirk*, 33 N. J. Eq. 170; *Haggerty* v. *McCanna*, 25 id. 48.

This is a case calling for the simple application of this rule. None of the defendants can stand in a better position than could Osborne, who made the improvements and under whom all hold. He acted in the matter as though there were no land records, and failed to learn a palpably plain fact there recorded. Instead, he accepted without question the word of his grantor. The confidence he reposed was abused and he was deceived. He has only his own want of ordinary care to thank for the result, and is in no position to assume the role of injured innocence in a court of equity and there ask for protection against himself.

In view of the character of our own decisions, as already

indicated, there is, perhaps, little profit to be gained from an examination of those in other jurisdictions; but they furnish an interesting field for study. There is a multitude of cases which have treated of the subject of allowances for betterments made by a possessor of real estate in ignorance of defects in his title. We have not attempted to examine them exhaustively. We have, however, examined a large number of them. They are found to disclose a great variety of situations, and certain of them some diversity of views. The vast majority of them have no real relation to the case at bar. They do, indeed, state and approve as an accepted principle that which the defendants invoke. But that is not enough. The present plaintiff has no occasion to deny the existence of the principle, or to quarrel with the statement of it expressed, as it commonly is, substantially as formulated in *Bright* v. *Boyd*, 1 Story's Rep. 478. It is not the principle, but the application of it to situations, that it is instructive to study; for it is here that the real question in the case at bar lies. So it is that the vast majority of the cases do not deserve our present attention. They are found to be cases in which the failure of title arose from some defect in the proceedings attending a judicial sale, or from facts *aliunde* the records, or from facts of record but not required by law to be recorded, or cases in which a holder's good title *prima facie* had been judicially declared void, or in which the trial court applied the principle of estoppel to one who had encouraged improvements, or stood silently by as they were made, or too long delayed asserting his claims. These cases naturally throw little light upon that aspect of the question which is distinctive in the case before us, and decisive of it. *Bright* v. *Boyd*, 1 Story's Rep. 478; *Hicklin* v. *Marco*, 46 Fed. Rep. 424; *Poole, Gilliam & Co.* v. *Johnson*, 62 Ia. 611; *Freichnecht* v. *Meyer*, 39 N. J. Eq. 551; *Benedict* v. *Gilman*, 4 Paige Ch. 58; *Morrison* v. *Robinson*, 31 Pa. St. 456; *Griswold* v. *Bragg*, 19 Blatch. 94; *Pearson* v. *Gooch*, 69 N. H. 571; *Morgan* v. *Walbridge*, 56 Vt. 405; *Bacon* v. *Cottrell*, 13 Minn. 194; *Miner* v. *Beekman*, 50 N. Y. 337; *Hadley* v. *Stewart*, 65 Wis. 481.

There are, besides, occasional cases in which the defect in title which surprised the improvement-maker was one which arose out of a question of law as to the legal effect of the uncertain language employed in a deed or will. These cases are also, as we have had occasion to observe, quite apart from the line of our present inquiry. *Whitney* v. *Richardson*, 31 Vt. 300; *Thomas* v. *Evans*, 105 N. Y. 601.

If one searches for cases in which the title defect was one apparent from an examination of the land records, his reward will be comparatively infrequent. When found it will, as far as we have observed at least, be discovered that the very few which have approved an allowance for betterments upon the equitable ground stated, or under a corresponding statute, have for the most part done so without paying the slightest heed to the effect which the notice to be implied from the record ought to have upon the situation. The court has apparently simply recalled the general rule so frequently laid down, or statute, and blindly applied it without regard to differentiating conditions. *McSorley* v. *Larissa*, 100 Mass. 270; *Troost* v. *Davis*, 31 Ind. 34. This is not universally true, however, since there are cases which, while commenting upon the effect of the notice, have nevertheless permitted an allowance or other relief on account of betterments. To reach this conclusion the courts adopting it have, however, been compelled to give a different effect to the implied notice arising from the record than we do. The distinction which they draw between constructive notice and actual notice, and their consequences, may be hard to logically understand, or to harmonize with generally accepted doctrine, but it is drawn, and upon that assumed distinction the decisions turn. *Beard* v. *Dansby*, 48 Ark. 183; *Cole* v. *Johnson*, 53 Miss. 94. In this connection *Whitney* v. *Richardson*, 31 Vt. 300, also deserves to be read.

There only remains to notice another line of cases which have laid down doctrine in general consonance with those herein applied to the case before us. *Effinger* v. *Hall*, 81 Va. 94; *New Orleans* v. *Gaines*, 131 U. S. 191; *Dawson* v. *Grow*,

29 W. Va. 333; *Parrish* v. *Jackson*, 69 Tex. 614; *Rice* v. *Dewey*, 54 Barb. 455.

The facts in the case against McMullen et al., differ in detail from those in the case of Beach v. Osborne et al., but raise no new question of law. The only question involved is one as to the right of the defendants to have redress for the permanent beneficial improvements which the equity owner, the defendant McMullen, has placed upon the land in alleged good faith and professed ignorance of the plaintiff's mortgage. The decision in the Osborne case is decisive of this and need not be repeated.

There is no error in either case.

In this opinion the other judges concurred.