[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#112)
The plaintiff, Ann B. Lunn, brought this legal malpractice action against the defendant Cummings Lockwood, a law firm. The defendant now moves for summary judgment, claiming that the CT Page 7176 action is barred by the applicable statute of limitations, that there is no evidence to support the plaintiff s claim that she received a title opinion from the defendant, and that she failed to show that she relied upon a certain letter relating to her real property to her detriment.
For the reasons that follow the defendant's motion for summary judgment must be granted.
 I. FACTUAL AND PROCEDURAL HISTORY
The plaintiff, Ann B. Lunn, commenced this action against the defendant law firm. Cummings Lockwood, on December 22, 1994, alleging "negligent and/or reckless and/or wanton misconduct in the preparation, execution and delivery of an attorney's title opinion." The following facts are essential to an understanding of the present case.
In 1950, Norton, Inc., a real estate development corporation, conveyed a 4.9 acre parcel of land ("Cudd property") located on the Scott's Cove side of Contentment Island Road in the Tokeneke section of Darien, Connecticut, to Robert Cudd. The duly recorded deed by which Cudd acquired the land contained the following restrictive covenant: "1. That the plans, specifications, and location of any and all buildings and installations to be constructed on the premises hereby conveyed shall be submitted to and approved by the said Grantor, acting through its President or Treasurer or successor of said Corporation, or the assignee of the said Corporation's rights and interest in and to the roads, ways, drives, and avenues, at Tokeneke, so-called, in said Town of Darien. 2. That said premises are not to be used for any business purpose whatsoever, or any purpose other than a strictly private residence, and they are not to be subdivided for the purpose of sale or transfer, and no sewer, cesspool, or drain shall be constructed, used, maintained, or permitted thereon (other than for surface water). unless approval be first obtained in the manner hereinbefore provided for the approval of plans and location of any building before erecting the same of said premises. 3. That the several conditions and provisions herein contained shall run with the land hereby conveyed, and the same shall be binding upon the said Grantee, his heirs, executors, administrators and assigns until the first day of January, A.D, 2000." In 1959, Norton, Inc., approved the subdivision of the Cudd property into a one acre parcel and a 3.9 acre parcel, without waiver of its right to enforce the restrictive covenants. CT Page 7177
By 1975, Norton, Inc. had sold its last parcel of land in the area. Norton, Inc., acting by its treasurer. Richard P. McGrath, partner in the defendant law firm, and Hope Norton Iaccacci executed a power of attorney and assignment ("power of attorney") which forms the basis of the plaintiff's claim. That document states that. "[i]n the event that either or both of the undersigned are unavailable at any, time and for any reason to consent to or approve any matter relating to Tokeneke, in the Town of Darien, County of Fairfield and State of Connecticut, by virtue of any covenant, restriction or agreement (or the equitable effect thereof) appearing in the Land Records of Darien and requiring the approval of one or both of the undersigned, we hereby appoint any then-partner of the firm of Cummings 
Lockwood . . . (acting alone, without the necessity for approval by his or her firm) our true and lawful attorney-in-fact and our successor in interest and our assignee for the purpose of giving such consent or approval."[1] The power of attorney was recorded in the land records of the Town of Darien on March 1, 1976.
In June, 1983, the plaintiff and her neighbor. Nancy H. Glanville, sought to acquire the 3.9 acre parcel, which was located directly across the street from their homes. They retained the services of William H. Atkinson, an attorney in the defendant law firm, to represent them in the transaction Atkinson had a title search performed which disclosed the restrictive covenant. The parties were advised of the covenant and took title to the 3.9 acre parcel as tenants in common from Cudd's estate in July, 1983.
Atkinson's services were again requested in March, 1984, to assist the plaintiff and Glanville in dividing the 3.9 acre tract between them. According to Atkinson, neither party intended to build on the property at that time, but neither wanted to be precluded from doing so in the future. The Darien Planning 
Zoning Commission approved the plaintiff's application for the division of their land solely for "annexation" as shown on a map and not as building sites. The commission imposed a condition that the map be prepared and filed bearing the notation that "[the] parcel has not been approved by the Planning and Zoning Commission as a separate lot for purposes of building or sale, but has been approved for the purpose of becoming annexed to and part of [the Lynn and Granville parcels] as depicted on the map. " CT Page 7178
On February 13, 1985, Atkinson wrote a letter ("1985 letter") to the president of the Tokeneke Association ("Association").[2] Warren MacKenzie. It is this letter which is the foundation of the plaintiff s claims. In the letter, Atkinson stated that he represented the plaintiff and Glanville in acquiring and partitioning the 3.9 acre parcel. He explained that the Planning and Zoning Commission approved a map showing the proposed partition and that a restrictive covenant provides that the premises are not to be subdivided for the purpose of sale or transfer unless approval first be obtained from Norton. Inc. or the assignee of Norton, Inc.'s right in and to the roads, drives, etc., in Tokeneke.[3] The letter further stated: "In view of the fact that the approved map contains notes indicating that the parcels to be deeded to Mrs. Lunn and Mrs. Glanville are not approved as building sites, but are to be annexed to their existing house lots; I do not feel that this division is one which the restrictive covenant was intended to govern. Nonetheless, in order to avoid any uncertainty with respect to the division which we are about to make, we would like to obtain the Tokeneke Association's approval for the division as shown on the map. I enclose a form of letter which Mrs. Glanville and Mrs. Lunn would appreciate having signed." The attached letter provided that "the Tokeneke Association, as the successor to Norton, Inc. of said corporation's right and interest in the roadways, drives and avenues at Tokeneke in the said Town of Darien, hereby approves the division of the property . . ."[4]
Thereafter, the Association granted the requested approval.[5]
The deeds effecting the partition, the signed map and the Association's written approval were recorded in the Darien land records.
In 1986, the plaintiff retained attorney Warren MacKenzie, who is not affiliated with the defendant, to represent her in obtaining the necessary approvals to build on the partitioned land.[6] In January, 1990, the plaintiff applied to the Association for approval of her plans for the subdivision of, and construction of a single family dwelling on her land. After the Association denied her application, the plaintiff sought judicial review. The plaintiff and the Association stipulated that the "Association did possess the power, and the sole power, to grant or withhold permission to subdivide and construct a dwelling upon the property." (Plaintiff's Complaint, ¶ 14.) The Association's decision denying approval of the plaintiff's application was upheld by the Superior Court.[7] See Lunn v.Tokeneke Association, Inc., supra, Superior Court, Docket No. CT Page 7179 281517. This decision was later affirmed.[8] Lunn v. TokenekeAssoc., Inc., 227 Conn. 601, supra.
As previously stated, the plaintiff's present cause of action is founded on the 1985 letter written by attorney Atkinson to the president of the Association. In her complaint, the plaintiff alleges that the letter constituted an "opinion letter asserting that the Tokeneke Association, and only the Tokeneke Association, had the power to execute approvals in accordance with the restrictive covenant. . . ." (Emphasis added.) The plaintiff further alleges that the defendant knew — or should have known that any partner of the defendant law firm had the power, pursuant to the power of attorney recorded in 1976, to issue the approval. The plaintiff alleges that in reliance on the 1985 letter: (1) she applied to the Association for approval of her subdivision and building plans ("plans") and it denied her request; (2) she embarked upon lengthy, costly and unsuccessful litigation to obtain permission from the Association; and (3) she agreed to stipulations that the Association possessed the sole power to approve such plans. Finally, the plaintiff alleges that based on the foregoing, and because she has been prohibited from constructing any building on her property until the year 2000, she has suffered damages.
The defendant filed an answer and special defenses on April 3, 1995. In its special defenses, the defendant alleges that the plaintiff's complaint was not brought within three years from the act or omissions complained of as required by General Statutes § 52-577, and that the complaint was not brought within two years from the date the injury complained of was first sustained or discovered, or in the exercise of reasonable care should have been discovered, as required by General Statutes § 52-584b. The defendant now moves for summary judgment as to the plaintiff's complaint. The defendant filed a memorandum of law with a supporting affidavit and documents and the plaintiff has filed a memorandum in opposition, also with supporting affidavits and documents. Each side filed supplemental memoranda in support of their respective positions, and oral argument was held.
 II. STANDARD FOR SUMMARY JUDGMENT
"Practice Book § 384 [, now Practice Book (1998 Rev.) § 17-49,] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material CT Page 7180 fact and that the moving party, is entitled to judgment as a matter of law." (Internal quotation marks omitted) Doty v.Mucci, 238 Conn. 800, 805, 679 A.2d 945 (1996). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp.,233 Conn. 732, 751, 660 A.2d 810 (1995).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party" (Internal quotation marks omitted.) HomeInsurance Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202,663 A.2d 1001 (1995). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact, a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . ." (Internal quotation marks omitted.) Id.
 III. DISCUSSION
A. STATUTE OF LIMITATIONS. § 52-577
In the present case, the defendant argues that it is entitled to judgment as a matter of law on a number of grounds. First, the defendant argues that the plaintiff's cause of action is barred by the three year statute of limitations governing legal malpractice actions. Because the act or omission complained of concerns the alleged opinion letter written in 1985 by attorney Atkinson to the president of the Association and the action was not brought until 1994, nine years after the act or omission, the defendant argues that it is clearly precluded by the three year statute of limitations set forth in General Statutes §52-577.
General Statutes §§ 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "Actions for legal malpractice based on negligence are subject to § 52-577, the tort statute of limitations. "Sanborn v.Greenwald, 39 Conn. App. 289, 301, 664 A.2d 803, cert. denied.235 Conn. 925, 666 A.2d 1186 (1995).
"`Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action CT Page 7181 begins to run at the moment the act or omission complained of occurs.' S.M.S. Textile Mills, Inc. v. Brown, Jacobson,Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 790,631 A.2d 340, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993). When conducting an analysis under § 52-577, `the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed.' Shuster v. Buckley,5 Conn. App. 473, 477, 500 A.2d 240 (1985). The three-year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury. Fichera v. Mine Hill Corporation,207 Conn. 204, 212-13, 541 A.2d 472 (1988)." Collum v. Chapin,
40 Conn. App. 449, 451-52, 671 A.2d 1329 (1996). Therefore, "[s]ection52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues." (Internal quotation marks omitted.) Sanborn v. Greenwald, supra,39 Conn. App. 301-02.
In the present case, the complaint alleges that the defendant was negligent and/or reckless "in the preparation, execution and delivery of an attorney's title opinion." The alleged title opinion that the complaint refers to is the 1985 letter written by attorney Atkinson to the president of the Association. Because that letter was written in 1985, and the plaintiff did not commence this action until 1994, it is evident that this action, if not based on a certificate of title or title opinion, would be precluded by the three year statute of limitations in General statutes § 52-577.
B. STATUTE OF LIMITATIONS. § 52-584b
The plaintiff however, alleges that this case is governed by the statute of limitations in General Statutes § 52-584b. Specifically, she alleges that the 1985 letter constitutes an attorney's title opinion letter and therefore, the statute did not begin to run until the date when the plaintiff's injury was first sustained or discovered or in the exercise of reasonable care should have been discovered. In her complaint, the plaintiff alleges that she first discovered the errors in the defendant's opinion letter during the fall of 1993, when her son discovered the power of attorney in the land records, and that she could not in the exercise of reasonable care have discovered her injury CT Page 7182 earlier, and therefore her complaint was timely brought.
General Statutes § 52-584b provides in relevant part: "Notwithstanding any provision of the general statutes, no action, whether in contract, tort or otherwise, against an attorney to recover for injury caused by negligence or by reckless or wanton misconduct in the preparation of and the execution and delivery of an attorney's title certificate or opinion, or the title search in connection therewith, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, except that no such action may be brought more than ten years from the date of such delivery" Therefore, the issues before the court are whether the 1985 letter constitutes an opinion letter so as to fall under the statute, and, if so, whether the action was brought within the prescribed statutory period.
The defendant argues that the 1985 letter is not a title opinion under the statute because it does not express an opinion as to the quality of the plaintiff s title to the parcel of property. The defendant relies on the case of ConnecticutAttorneys Title v. McDonough, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 530925 (December 4, 1996, Sheldon. J.) (18 Conn. L. Rptr. 337), to support its position. In that case, the court stated that "[a]ttorney's title certificates or opinions are prepared by attorneys for their clients before the clients enter into contracts to purchase real property. The obvious purpose for preparing such a certificate or opinion is to assure one's client that if the property is purchased, his title to it will be free and clear of all encumbrances, and thus that his right to use and enjoy it will not be interfered with." Id.
The statute itself does not define "an attorney's title certificate or opinion." The legislative history suggests that the statute was enacted to protect consumers from defective certificates or opinions relating to title. See 24 S. Proc., Pt. 4, 1981 Sess., pp. 1400-03; 24 H.R. Proc., Pt. 3, 1981 Sess., pp. 675-77. It is questionable whether the 1985 letter constitutes an attorney's title opinion so as to be governed by § 52-584b
because the letter arguably does not express an opinion as to the plaintiff's title. Nor does it expressly state what the plaintiff claims it states. The court, however, need not reach this issue. Assuming arguendo, that the letter is a title opinion and the CT Page 7183 present case is therefore governed by § 52-584b. I conclude that the plaintiffs action was brought beyond the statutory period set forth in the statute.
Unlike § 52-577, which requires a party to bring a cause of action within three years from the date of the act or occurrence complained of, § 52-584b permits a cause of action to be brought within two years from the date when the injury is first sustained or discovered, or in the exercise of reasonable care, should have been discovered. In the present case, the plaintiff claims that she did not discover her injury until the fall of 1993, when her son discovered the power of attorney in the land records. The plaintiff's argument, however, is flawed for the following reasons.
The Connecticut Supreme Court has held that "[w]hen a deed is lodged with the town clerk, it is constructive notice to all the world. . . . Under our recording system a deed duly recorded is constructive notice to all the world; and the law conclusively presumes that every person interested has knowledge, not only of the deed, but of its precise language. . . . The law implies notice on the ground that it is conclusively presumed that a person will not purchase an interest in a piece of land without examining the condition of the record. Such an act would be required by common prudence. . . . Whether a purchaser has, or has not, actual notice of the contents of a prior deed properly executed and duly recorded, the effect is the same. The policy of our law makes the record sufficient notice."[9] (Citations omitted; internal quotation marks omitted.) Beach v. Osborne,74 Conn. 405, 411-12, 50 A., 1019 (1902). See also ConnecticutNational Bank v. Lorenzato, 221 Conn. 77, 81-82, 602 A.2d 959
(1992).
The plaintiff first hired attorney Atkinson of the defendant law firm in 1983 to represent her in acquiring property across the street from her home. The plaintiff was advised of a restrictive covenant on the property, and she nevertheless purchased the property as a tenant in common with her neighbor. In 1985, the plaintiff was again represented by Atkinson for the purpose of partitioning her property. At neither time was the plaintiff advised that a power of attorney existed giving partners of the defendant law firm power under certain circumstances to approve pursuant to the restrictive covenant. In 1986, however, the plaintiff retained the services of attorney MacKenzie, the former president of the Association for the very CT Page 7184 purpose of seeking approval for subdividing and building on her land. In 1990, MacKenzie applied to the Association for such approval. When the Association initially refused to consider the plaintiffs application, she retained other counsel. Austin Wolf and Christopher Smith, who then sought injunction relief on her behalf. Thus, the plaintiff retained the services of three
attorneys for the very purpose of obtaining the approval required by the restrictive covenant to subdivide and build on her land. Under the holding of Beach v. Osborne, supra, 74 Conn. 411-12, those attorneys knew or should have known of the existence and provisions of the power of attorney. a duly, recorded instrument in the land records.
Accordingly, I conclude that the plaintiff knew or should have known of the power of attorney and its terms no later than December, 1990, when she first sought injunctive relief to compel the Association to review and act upon her application. See Allenv. Nissley, 184 Conn. 539, 543, 440 A.2d 231 (1981) (holding that knowledge of an attorney is imputed to the client). I further conclude that the plaintiff should not be able to retain the services of three attorneys for the very purpose of obtaining approval pursuant to a restrictive covenant, to subdivide and to build on her land, and then claim to be ignorant of the existence of a duly recorded power of attorney granting the defendant power to approve such plans, when her son, a lay person, claims to have discovered its existence in the land records in 1993.[10] As the court held in Beach, grantees "may not shut their eyes to information which is blazoned for their instruction, and plead innocence if they suffer for their ignorance." Beach v. Osborne,
supra, 77 Conn. 415.
Moreover, the question of when an injury is first sustained or discovered or in the exercise of reasonable care should have been discovered and whether the complaint was brought within two years of that date has been decided as a matter of law SeeCitiCorp Mortgage, Inc. v. Bradford, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 318118 (July 1, 1996, Hauser, J.) (17 Conn. L. Rptr. 305); Farmers Mechanics v.Rakosky, Superior Court, judicial district of New London at New London, Docket No. 528183 (March 17, 1995, Hurley, J.) (14 Conn. L. Rptr.). In People's Bank v. Rasamny Dineen, Superior Court, judicial district of Danbury, Docket No. 317049 (February 26, 1997, Stodolink, J.), the court explained that "[b]ecause the question of when it was reasonable for the plaintiff to have discovered the title defect is an issue material to the running CT Page 7185 of the statute of limitations, summary judgment is appropriate in this action only if the plaintiff cannot demonstrate that the issue is in dispute" In that case, summary judgment was denied because the plaintiff satisfied its burden of raising a factual dispute, namely whether the plaintiffs conduct comported with the customary practice of lending institutions' reliance on attorneys' title certificates.
Here, however, the plaintiff merely asserts in her complaint that she could not have discovered the power of attorney prior to 1993. The plaintiff has failed to substantiate her claim, by affidavit or otherwise, and, she has failed to meet her burden of demonstrating a factual predicate as to this material issue.
Accordingly, relying on Beach, I hold that as a matter of law, the plaintiff knew or should have known of the existence of the power of attorney no later than December, 1990, because she engaged the services of three attorneys for the very purpose of obtaining approval under the restrictive covenant, and because the power of attorney was duly recorded in the land records. Moreover, the plaintiff has failed to substantiate her claim that she could not have found the recorded document before 1993. Because the plaintiff's action was brought more than two years after she knew or should have known of her injury, it is barred under § 52-584b.
C. FRAUDULENT CONCEALMENT
The plaintiff seeks to avoid the limitations period by arguing that the defendant fraudulently concealed the existence of the power of attorney and the fact that it could grant approvals under the covenant. The plaintiffs argument, however, is without merit.
First, "[i]n order to raise a claim of fraudulent concealment, the party challenging a statute of limitations defense must affirmatively plead it." Beckenstein v. Potter Carrier, Inc., 191 Conn. 150, 163, 464 A.2d 18 (1983); see also Practice Book § 172, now Practice Book (1998 Rev.) §10-57.[11] general denial of the defense is insufficient.Beckenstein v. Potter Carrier, Inc., supra, 191 Conn. 163. The plaintiff's reply to the defendant's statute of limitations special defenses contained general denials. Accordingly, the plaintiff's claims of fraudulent concealment are not properly before the court. See id. CT Page 7186
Even assuming for the purposes of this motion that the court may consider the plaintiff's fraudulent concealment claim, r find that the plaintiff has failed to substantiate her claim of fraudulent concealment. "[A] part opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]" (Internal quotation marks omitted.)Home Ins. Co. v. Aetna Life Casualty Co., supra, 235 Conn. 202.
In order to establish that the defendant fraudulently concealed the power of attorney so as to toll the statute of limitations, the plaintiff must how that "the [defendant was] aware of the facts necessary to establish this cause of action . . . and that [the defendant] had intentionally concealed those facts from the plaintiff. . . . the [defendant's] actions must have been directed to the very point of obtaining the delay [in filing the action] of which [it] afterward [sought] to take advantage by pleading the statute." (Citations omitted; internal quotation marks omitted.) Bound Brook Association v. Norwalk,198 Conn. 660, 665-66, 504 A.2d 1047, cert. denied. 479 U.S. 819107 S.Ct. 81, 93 L.Ed.2d 36 (1986). "To meet this burden, it was not sufficient for the [plaintiff] to prove merely that it was more likely than not that the [defendant] had concealed the cause of action. Instead, the [plaintiff has] to prove fraudulent concealment by the more exacting standard of clear, precise, and unequivocal evidence." (internal quotation marks omitted) Id., 666 Although summary judgment is ordinarily particularly inappropriate for deciding questions of intent and motive, the Connecticut Supreme Court has decided the issue of fraudulent concealment as a matter of law. See Connell v. Colwell,214 Conn. 242,251,571 A.2d 116 (1990).
Accordingly, I find that the plaintiff in the present case has failed to establish a factual predicate concerning the defendant's alleged fraudulent concealment. The plaintiff alleges that the evidence shows that the defendant took affirmative steps to conceal the existence of the power of attorney from the plaintiff. How this can be so with respect to a document duly CT Page 7187 recorded in the town's land records has not been demonstrated. Mere assertions of fact, however, are insufficient to defeat a motion for summary judgment. See Home Ins. Co. v. Aetna Life Casualty Co., supra, 235 Conn. 202. The plaintiff has failed to offer any proof in support of her position. The plaintiff's claim of fraudulent concealment is insufficient as a matter of law, and, therefore, the statute of limitation governing her action has not been tolled.
D. LEGAL INSUFFICIENCY OF PLAINTIFF'S CLAIM
Finally, even if the plaintiff's cause of action is not precluded by the statute of limitations, I also conclude that as a matter of law, the plaintiff's claims are insufficient to establish legal malpractice.
The plaintiff alleges that if she had known about the power of attorney she would have sought the approval from the defendant, who she claims owed her a duty of loyalty and was therefore somehow bound to grant her request. According to the plaintiff, if she had known about the power of attorney in 1990, when she initially sought the approval of the Association to subdivide and build on her property, she would have sought and obtained the approval from the defendant and would not have embarked upon the lengthy and costly litigation to obtain permission from the Association. The plaintiff further alleges that because of the erroneous 1985 letter of attorney Atkinson, which she claims states that only the Association had the power to grant approvals, she did not seek approval from the defendant and consequently, she suffered damages.[12]
The plaintiff's malpractice claim is based on the defendant's alleged negligence in the preparation, execution and delivery of the 1985 letter. In order to prove her cause of action, the plaintiff must "prove the negligence of the attorney that such negligence was the proximate cause of injury to the plaintiff, and that absent such negligence, the plaintiff would have been successful in the underlying [earlier] action." (internal quotation marks omitted.) Garcia v. Solomon, Superior Court, judicial district of New Haven at New Haven, Docket No. 263311 (September 19, 1990, Healey, S.T.R) (2 Conn. L. Rptr. 411). See also Heritage Square Associates v. Blum, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 117855 (July 21, 1992, Nigro, J.) (7 Conn. L. Rptr. 103) (holding that in order to prevail in a legal malpractice action. "a plaintiff must CT Page 7188 not only prove a breach of a legal duty, but also damages resulting from that breach").
I conclude that the defendant is entitled to judgment as a matter of law for several reasons. First, even assuming that the defendant had a duty to disclose the t power of attorney at the time the plaintiff was represented by Atkinson, and that the defendant was negligent in failing to do so, the plaintiff has not submitted enough proof to how that had she known or had the defendant disclosed the existence of the power of attorney, the defendant would or could have granted her request.
In her supplemental memorandum of law, the plaintiff slates that "the defendant did have at all relevant times the power to approve the plaintiff's plans to build a home on her Tokeneke property and not only concealed that fact from her while acting as her attorney but rendered an opinion on the title to that property which affirmatively concealed the truth and led her on the entirely unnecessary, tremendously costly and ultimately disastrous excursion known as Lunn v. Tokeneke Association." (Plaintiff's Supplemental Memorandum, p. 3.) This argument, however, completely ignores the fact that at the time the plaintiff was represented by attorney Atkinson, she made numerous representations to the Association, her neighbors and Atkinson that she did not intend to build on her property and that she did not request such approval from either the defendant or the Association at that time. See Lunn v. Tokeneke Association, Inc.,
supra, Superior Court, Docket No. 281517.
Furthermore, the plaintiff's argument that the defendant had a duty of loyalty to the plaintiff to grant the approval is unavailing. The attorney-client relationship between the defendant and the plaintiff terminated in 1985, when the services for which the defendant was engaged were successfully completed, namely, the partitioning of the plaintiff/Granville parcel, or no later than 1988, when Atkinson and the law firm represented the plaintiff in certain estate matters. See Montanaro BrothersBuilders v. Goldman, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 232242 (December 21, 1990, McGrath, J.) (explaining when the attorney-client relationship terminates). Absent such a relationship, the defendant did not owe the plaintiff the duty as alleged. The plaintiff s statement in her affidavit that she believed that she was still represented by the defendant in the fall of 1993 is conclusory and equally unavailing Attorney Atkinson left the defendant law firm in CT Page 7189 November, 1988. Any statement he might have made to the plaintiff in the fall of 1993, regarding an "ongoing attorney-client obligation" dealt with confidentiality only and could not demonstrate the existence of an ongoing and continuing attorney client relationship.
Moreover, the power of attorney specifically stated that in the event that either or both laccacci or the Treasurer of Norton, Inc. were unavailable to grant approvals under the restrictive covenant, any partner of the defendant law firm had the power to do so. The plaintiff has not offered any evidence establishing that either or both of the above were unavailable. Instead, she takes the position that by virtue of the power of attorney, the defendant had authority to approve her plans. The clear language of the restrictive covenant and the power of attorney indicate that such power became effective only if Iaccacci or Norton's treasurer were unavailable.
Contrary to the plaintiff's assertions, the defendant was under no obligation to approve her plans. As previously mentioned the attorney-client relationship between the plaintiff and the defendant terminated in 1985, or no later than 1988. The defendant has presented evidence that it has never exercised its power to grant approvals under the power of attorney, and there is no evidence that it ever had done so.[13] The plaintiff relies on several documents wherein attorney McGrath granted approvals pursuant to the covenant. In those instances, however, attorney McGrath was acting as treasurer of Norton, Inc., and not as a partner of the law firm pursuant to the power of attorney.
Even assuming that the power of attorney was still valid at the time the plaintiff began her quest for the approval in 1990, and that the defendant had the power and discretion thereunder to grant such approval, which is questionable. I conclude that the plaintiff has failed to offer sufficient evidence to establish a genuine factual issue for trial as to her claim that if she had known about the power of attorney in 1990, she would have sought and obtained approval from the defendant rather than from the Association. The party opposing summary judgment "must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue" Home Ins. Co. v. Aetna Life Casualty Co., supra, 235 Conn. 202. The plaintiff has failed to do this. Thus, the defendant is entitled to summary judgment as a matter of law. CT Page 7190
 CONCLUSION
For the foregoing reasons, the defendant's motion for summary judgment is granted.
Teller, J.